STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas L. PITSCH, Defendant-Appellant.

Supreme Court

*No. 84–627–CR. Argued May 29, 1985.—Decided June 28, 1985.*

(Also reported in 369 N.W.2d 711.)

For the defendant-appellant there were briefs by *Matthew H. Huppertz* and *Van Skike & Huppertz,* Milwaukee, and oral argument by *Matthew H. Huppertz.*

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This appeal, before the court on certification by the court of appeals pursuant to sec. 809.61 Stats. 1983–84, is from a judgment of conviction of theft in the amount of $2,100, contrary to sec. 943.20 (1) (a), Stats. 1983–84, and from an order denying postconviction relief. The judgment and order were entered by the circuit court for Waukesha county, Roger P. Murphy, circuit judge. The motion for postconviction relief was based mainly on a claim of ineffective assistance of counsel.

The court of appeals certified the appeal to this court, requesting that we decide the issue of "What is the appropriate standard to be applied in Wisconsin in the determination of whether a defendant has been denied his state and federal constitutional right to the effective assistance of counsel?" Because we conclude that the defendant was denied his federal constitutional right to the effective assistance of counsel, we reverse the conviction and order and remand the cause for a new trial.

The facts on which this appeal is based arose out of the defendant's trial for theft of jewelry, valued at $2,000, belonging to Mrs. Richert. The theft occurred during a birthday party which the defendant and his

girlfriend, a juvenile, attended, along with approximately 30 other people, at the home of Mrs. Richert. The defendant denied he took the jewelry.

The state called several witnesses at trial. Mrs. Richert testified that she saw the defendant and his girlfriend upstairs outside Mrs. Richert's bedroom on the night of the party and that they left immediately after she told them to go downstairs. The proprietor of the Gold and Silver Shop testified that on May 10, 1982, he bought several items of jewelry, later identified as belonging to Mrs. Richert, from a Mr. Straehler. Other testimony indicated that after the sale Mr. Straehler returned to his car, which was parked outside the shop, and that the defendant was seated in the car. Both individuals were arrested after the proprietor summoned the police.

An acquaintance of the defendant testified on direct examination that on May 9, 1982, he had a conversation with the defendant during which the defendant stated he had taken some items of jewelry but did not indicate from where he had taken them. The state declared the witness to be hostile and cross-examined him. He had previously told police that the defendant said he "stole" the jewelry. During cross-examination by the defense the witness stated that he had given an untrue statement to the police. The witness admitted he had three prior convictions.

The defendant and his girlfriend testified on behalf of the defendant. Both testified that the girlfriend had given the items to the defendant, telling the defendant that she had found them while cleaning her jewelry box and asking the defendant to get an appraisal and possibly sell them. On cross-examination, the girlfriend revealed she had given him jewelry on two or three previous occasions with a similar explanation. She also said she had a child by the defendant and was reminded of a prior statement given to the investigating officer in which she had

stated that she found the jewelry on the steps of the house and that the defendant was with her at the time. The girlfriend testified that she stole the jewelry without the defendant's knowledge and that as a result of this theft, she had been found delinquent by the juvenile court.

The defendant testified against the advice of counsel. He testified that he did not take the jewelry. Furthermore, he said that Mr. Staehler had gone with him to the Gold and Silver Shop because Mr. Staehler knew the proprietor and would be able to get a good deal. The defendant also stated that his girlfriend had never given him jewelry before and that he did not go into the Gold and Silver Shop with Mr. Staehler because "he didn't feel like it."

On direct examination defense counsel asked the defendant on "how many occasions he had been convicted of a crime." Defense counsel apparently followed the usual trial strategy of raising the issue of defendant's prior convictions on the premise that this approach is less damaging than if the prosecutor raises the issue first. *See, e.g., State v. Adams*, 257 Wis. 433, 436, 43 N.W.2d 446 (1950) ; *Nicholas v. State*, 49 Wis. 2d 683, 689, 183 N.W.2d 11 (1971). The defendant responded "two." On cross-examination, the prosecutor established that the defendant had been convicted on at least three separate occasions of nine offenses.[1] Because the de-

[1] On cross-examination the prosecutor asked the defendant how many "times" he had been convicted of a crime. When the defendant responded "twice," the prosecutor requested a conference out of the hearing of the jury. At this conference, it became clear that neither the defendant, his counsel, nor the prosecutor had complete information about the defendant's record, either in terms of when the sentences had been pronounced or the number of times the defendant had appeared for sentencing. The circuit court, however, stated that "[i]t seems to me, I have to agree with Mr. Bucher [the prosecutor], it seems to me there's nine

fendant had misrepresented the number of his prior convictions, the prosecutor was also able to put the nature of these offenses before the jury. *State v. Hungerford,* 54 Wis. 2d 744, 748–49, 196 N.W.2d 647 (1972). *Cf.* Sec. 906.09(1), Stats. 1983–84; *Underwood v. Strasser,* 48 Wis. 2d 568, 570–71, 180 N.W.2d 631 (1970). The state was thus able to place before the jury evidence that the defendant had been convicted once of attempted theft, twice of theft, once of entry into a locked vehicle with intent to steal, once of criminal damage to property, and four times of burglary.

The defendant now claims that he is entitled to a new trial because he was denied his state and federal constitutional rights to the effective assistance of counsel. The state acknowledged in oral argument, although its brief was more guarded, that counsel's performance was arguably deficient. In any event the state urges that defense counsel's performance, deficient or not, did not result in the defendant's receiving ineffective assistance of counsel in the constitutional sense.

The defendant makes reference to both art. I, secs. 7 and 8, of the Wisconsin Constitution and to the sixth and fourteenth amendments of the United States Constitution. We observe, first, that when this court interprets a provision of the federal constitution, this court is bound by the interpretations which the United States Supreme Court has given that provision. Although "it is the prerogative of the State of Wisconsin to afford greater protection to the liberties of persons within its boundaries under the Wisconsin Constitution than is mandated by the United States Supreme Court under the

---

separate counts." The circuit court also concluded that the prosecutor had "the right to go into details since [the defendant] said he's only had two convictions [sic]." The circuit court would have allowed defense counsel to correct the error if the prosecutor would allow it, but the prosecutor said that while he would like to, he could not.

Fourteenth Amendment," *State v. Doe,* 78 Wis. 2d 161, 171, 254 N.W.2d 210 (1977), these greater protections, when found, are based upon the state constitution and this court's interpretations thereof, not upon this court's independent interpretation of the United States Constitution. In analyzing the defendant's claim of ineffective assistance of counsel under the sixth and fourteenth amendments of the United States Constitution, we therefore turn to relevant decisions of the United States Supreme Court.

The Supreme Court has only recently articulated a test for assessing counsel's representation under the sixth amendment. Thus, although the Court had discussed the failure to provide counsel, it was not until *Cuyler v. Sullivan,* 446 U.S. 335 (1980), and more recently *Strickland v. Washington,* —— U.S. ——, 104 S. Ct. 2052, *reh'g denied,* 104 S. Ct. 3562 (1984), that the Supreme Court considered situations in which counsel participated in the proceedings but the defendant claimed to be deprived of effective assistance because counsel failed to render adequate legal assistance. *Strickland v. Washington,* 104 S. Ct. at 2063–64.

In *Strickland v. Washington,* the Court set forth a two-part test for determining whether counsel's actions constituted ineffective assistance in the constitutional sense: deficient performance and prejudice to the defendant. The court set forth the test as follows: "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 2064.

The standard of review the Court applies to each of these questions is that "both the performance and prejudice components of the ineffectiveness inquiry are mixed

questions of law and fact." *Id.* at 2070.[2] Thus, we will not reverse the circuit court's findings of fact, that is, the underlying findings of what happened, unless they are clearly erroneous. Sec. 805.17(2), Stats. 1983–84. The questions of whether counsel's behavior was deficient and whether it was prejudicial to the defendant are questions of law, and we do not give deference to the decision of the circuit court. We turn now to a consideration of the first prong of the *Strickland v. Washington* test.

The defendant points to seven specific deficiencies in defense counsel's performance. First, prior to the direct examination in which defense counsel questioned the defendant regarding the number of occasions on which he had been convicted of a crime, defense counsel did not file a discovery demand pursuant to sec. 971.23(2), Stats. 1983–84, under which the district attorney would have been compelled to furnish a copy of the defendant's criminal record which was within the possession, custody or control of the state. Second, although defense counsel admittedly knew of the "open file" policy of the district attorney, defense counsel did not avail himself of this policy, which would have allowed him to examine the district attorney's entire file. Third, defense counsel did not request a hearing outside the presence of the jury, under secs. 906.09(3),[3] 901.03,[4] and 901.04,[5] to determine

[2] We have reached a similar conclusion in reviewing the circuit court's determination. *See State v. Felton,* 110 Wis. 2d 485, 504–505, 329 N.W.2d 161 (1983).

[3] Sec. 906.09(1), (2), (3), Stats. 1983–84, reads as follows:

"**906.09 Impeachment by evidence of conviction of crime.** (1) GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible. The party cross-examining him is not concluded by his answer.

"(2) EXCLUSION. Evidence of a conviction of a crime may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

whether the circuit court would exclude evidence of one or more of the defendant's prior convictions. Fourth,

"(3) ADMISSIBILITY OF CONVICTION. No question inquiring with respect to conviction of a crime, nor introduction of evidence with respect thereto shall be permitted until the judge determines pursuant to s. 901.04 whether the evidence should be excluded."

4 Sec. 901.03, Stats. 1983–84, reads as follows:

. "901.03 Rulings on evidence. (1) EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

"(a) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

"(b) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

"(2) RECORD OF OFFER AND RULING. The judge may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. He may direct the making of an offer in question and answer form.

"(3) HEARING OF JURY. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

"(4) PLAIN ERROR. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge."

5 Sec. 901.04, Stats. 1983–84, reads as follows:

"901.04 Preliminary questions. (1) QUESTIONS OF ADMISSIBILITY GENERALLY. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the judge, subject to sub. (2). In making his determination he is bound by the rules of evidence only with respect to privileges.

"(2) RELEVANCY CONDITIONED ON FACT. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

despite defense counsel's failure to avail himself of information about the defendant's prior convictions and despite defense counsel's failure to attempt to exclude evidence of one or more of the defendant's prior convictions, on direct examination defense counsel asked the defendant about his prior convictions. Fifth, defense counsel's question was directed to the number of "occasions" the defendant had been convicted instead of the number of convictions.[6] Sixth, defense counsel never tried to rehabilitate the defendant following the prosecutor's elicitation of the natures of the nine prior convictions. Finally, despite the admission of the evidence of the nature of the defendant's prior convictions, defense counsel failed to move for a mistrial.

In *Strickland v. Washington* the Court explicitly refused to provide standards by which counsel's performance could be measured. Rather, the court states, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." 104 S. Ct. at 2065. We are, however, provided with the following guidance in reviewing counsel's performance:

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a

---

"(3) HEARING OF JURY. Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require.

"(4) TESTIMONY BY ACCUSED. The accused does not, by testifying upon a preliminary matter, subject himself to cross-examination as to other issues in the case.

"(5) WEIGHT AND CREDIBILITY. This section does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility."

[6] The question itself is ambiguous, possibly referring to the number of separate convictions or to the number of times the defendant had appeared in court to be convicted on multiple counts.

claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 2066.

Thus, judicial scrutiny of counsel's acts will be highly deferential, and prevailing norms of practice, such as professionally set standards, may serve as guides, but are only that, given the wide variety of factual situations with which the court may be faced. *Id.* at 2065. Furthermore, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 2066.

The defendant's own statements and actions were significant in the present case in at least two respects. First he had informed counsel of the number of his prior convictions and according to counsel that number matched the answer given at trial on direct examination. Second, the defendant took the stand over counsel's objection and somewhat to counsel's surprise during the last phases of the trial. The defendant, in initially agreeing not to testify, however, had indicated that he wanted to keep his options open.

The question is whether these actions on the part of the defendant justify counsel's failure to obtain a copy of the defendant's record and more particularly his failure, upon learning that the defendant insisted on testifying, to request a sec. 906.09(3) hearing immediately upon

learning that the defendant would testify. Although this is a close question, we think they do not.

For counsel to have represented the defendant adequately before and during trial, including sentencing, he should have had reliable information regarding the defendant's prior convictions. Although the defendant agreed at one time not to testify, he also said he wanted to leave his options open. Had defense counsel been appropriately informed of the defendant's prior convictions, both in terms of number and in terms of their nature, he could have more adequately counseled him and might have been more persuasive in dissuading the defendant from taking the stand in his own defense. Defense counsel had nothing to lose and everything to gain by obtaining a complete and accurate record of the defendant's prior convictions. Getting this information would not have been difficult.

We are also not persuaded that the information the defense counsel gained from the defendant himself or from counsel's attendance in a peripheral role at the defendant's parole revocation hearing obviated counsel's duty to investigate in this case. The ABA Standards for Criminal Justice describe defense counsel's duty to investigate in the following terms:

"It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty." ABA Standards for Criminal Justice, The Defense Function, sec. 4–4.1 (2d ed. 1982).

When the defendant did take the stand, defense counsel had an opportunity to make up for his earlier failure to

investigate the defendant's conviction record. Sec. 906.09 (3) provides that introduction of evidence with respect to conviction shall not be permitted until the judge determines whether the evidence should be excluded. Yet defense counsel did not seek a hearing outside the presence of the jury at which time the court and the parties could have established the correct number of prior convictions for impeachment purposes. Had defense counsel done so he might have attempted to persuade the circuit court that not all the convictions should be included in the number of convictions the defendant would have had to admit on the stand. While sec. 906.09 (1) provides that evidence of a conviction is admissible to attack the credibility of a witness, sec. 906.09 (2) allows the circuit court to exclude evidence of a conviction if the probative value is substantially outweighed by the danger of unfair prejudice.

The defendant could thus have been instructed at the conference that he would be asked whether he had ever been convicted of a crime, and he should answer yes; that he would be asked how many times he had been convicted and that he should answer a specified number. In this manner the defendant would have been insulated from any further inquiry about the prior convictions on cross-examination. *Nicholas v. State, supra,* 49 Wis. 2d at 689.

The state invites us to conclude that the facts in this case are comparable to those in *State v. Bowie,* 92 Wis. 2d 192, 284 N.W.2d 613 (1979), in which this court determined that "[t]he fact that . . . defense counsel relied upon [the defendant's] acknowledgement that none of the convictions appearing on his rap sheet had been reversed [was] not grounds to support an argument that [the defendant] was denied effective assistance of counsel." *Id.* at 208. In *Bowie,* prior to the defendant's testifying, the trial judge, the lawyers and the defendant had a conference outside the presence of the jury, at

which time they agreed that the defendant had previously been convicted of four crimes. *Id.* at 197. In fact, and unknown to defense counsel, three of the convictions had been reversed. During the conference the prior criminal record of the defendant was extensively reviewed and the defendant participated in the review. *Id.* at 202. On cross-examination, the defendant was asked how many times he had been convicted of a crime and he responded that he had been convicted four times. Apparently, given the correspondence of this answer with the discussion at the conference, the jury never heard the nature of the crime. The jury instructions given at the conclusion of the trial did not refer to the number of convictions, only to the fact that prior crime evidence had been introduced and the purpose for which such evidence should be used.

Unlike *Bowie,* the present situation involves counsel's never even seeking the defendant's rap sheet, either through a discovery motion or through the open file policy of the district attorney. In the present case the sec. 906.09(3) hearing was not held until after the defendant had given the answer which subsequently allowed the jury to hear of the nature of the prior convictions. In the present case, the nature of the prior convictions of which the jury was apprised was very close in type to the crime for which the defendant was being tried. It is unclear in *Bowie* whether, in concluding that the defendant was not denied effective assistance of counsel, the court relied on lack of showing of deficient performance or the lack of prejudice to the defendant. However, it is not important to determine the grounds of the *Bowie* decision since the facts of the present case differ from those in *Bowie* to the extent that *Bowie* is not controlling under either interpretation.

■ We turn now to a consideration of the second prong of the *Strickland v. Washington* test, namely whether "counsel's errors were so serious as to deprive the de-

fendant of a fair trial, a trial whose result is reliable." 104 S. Ct. at 2064. We conclude under the specific facts of this case that they were.

We note, as we did before, that inasmuch as we are considering a claim under the federal Constitution, we are bound by the test set forth by the Supreme Court. We therefore, turn again to the Court's discussion in *Strickland v. Washington*.[7] Under this analysis, the defendant must affirmatively prove prejudice. Furthermore, we are instructed that "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 2068. The Court said that while it is "not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," *id.* at 2067, neither must the "defendant . . . show that counsel's deficient conduct more likely than not altered the out-

---

[7] In *Strickland v. Washington*, —— U.S. ——, 104 S. Ct. 2052 (1984), the Court stated that "the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution . . . and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness . . ." *Id.* at 2068 (citing *United States v. Agurs*, 427 U.S. 97, 104, 112–113 (1976) and *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872–874 (1982)).

The omissions at question in *Strickland v. Washington* involved counsel's failure, in conjunction with a sentencing hearing, to request a presentence report, to seek out character witnesses, to request a psychiatric examination, and to present such character or psychiatric evidence at the hearing. The omissions, therefore, resulted in the exclusion of information from consideration rather than in the inclusion of potentially prejudicial information. Since the Court apparently grounds its test in the need for reliable proceedings we assume that the *Agurs/Valenzuela-Bernal* approach was intended for all ineffective assistance of counsel cases, not just for those involving excluded information. In this case evidence which arguably need not have been admitted was heard by the jury.

come in the case." *Id.* at 2068. Although in *Strickland v. Washington* the Court speaks in terms of the defendant's showing that "but for counsel's unprofessional errors the result of the proceeding would have been different," *id.* at 2068, the Court rejects an "outcome-determinative standard," *id.* at 2068. The focus is on the reliability of the proceedings. "An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable. . . . The result of a proceeding can be rendered unreliable, and hence the proceeding itself, unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.*

The *Strickland v. Washington* test for prejudice, which we apply, emphasizes that the error is prejudicial if it undermines confidence in the outcome. Thus, the Court summarized its standard as follows: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068.

The Court further directs us that these principles "do not establish mechanical rules." The principles merely

"guide the process of decision [and] the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 2069.

Although the state presented five witnesses no one testified that the defendant was seen taking the jewelry. The most damaging testimony came from the victim and the acquaintance. The victim testified that she saw the defendant and his girlfriend upstairs outside her bed-

room on the night of the party and that they left immediately after she told them to go downstairs.

The only testimony arguably at odds with the defense story—that the girlfriend had taken the jewelry and that the defendant did not know of its origins—was the ambiguous statement of the defendant's acquaintance that the defendant told him he had "taken" the items and the acquaintance's sworn statement that the defendant had told him he had "stolen [the items] from someplace." On cross-examination, however, the sworn statement was discredited. The defendant's testimony therefore was substantially consistent with that of his girlfriend and was not directly contradicted by any of the state's witnesses.

The defense was "*I* did not do it." The issue for each juror was, "Whom do I believe?" In denying the defendant's motion for a directed verdict at the close of the state's case, the trial court clearly stated that "the issue . . . before the jury [was] a matter of credibility. . . ."

The defendant's credibility was dealt a significant blow when the prosecutor questioned defendant about his convictions. The following exchange occurred, the district attorney questioning the defendant:

"Q. Now, Mr. Pitsch, you previously stated before we took a break that you were convicted of a crime twice; that's not true, is it?

"A. No, I misunderstood the question.

"Q. As a matter of fact, you were convicted August 14th, 1980 of one count of attempted theft, two counts of theft and one count of entry into a locked vehicle with intent to steal; isn't that right?

"A. Yes, sir.

"Q. And it's also correct, isn't it, that you were convicted on May 20th, 1982 of a charge of criminal damage to property; isn't that correct?

"A. Yes.

"Q. And it's also correct, isn't it, that you were convicted of four separate counts of burglary on January 6th, 1983?

"A. No.

"Q. You were sentenced on that day; isn't that correct?

"A. Yes.

"[DEFENSE COUNSEL]: I don't think that's when he was sentenced.

"[DISTRICT ATTORNEY]:

"Q. But you were convicted of those previous four counts of burglary?

"A. In 1980.

"Q. So in all you have nine separate criminal convictions; isn't that right?

"A. I'm not sure of the exact amount.

"Q. Well, four plus one is five, plus the other four is nine.

"A. Okay.

"Q. So it's not just two, is it?

"A. Well, I misunderstood the question, because I was only convicted on two separate occasions of nine crimes.

"Q. I see. I have nothing further."

This attack on defendant's credibility and a disclosure of the nature of the defendant's prior crimes came before the jury because—and apparently only because—the defendant on direct examination by his own counsel incorrectly answered the question "on how many occasions" he had been convicted of a crime—a question which was premature by virtue of being asked prior to the 906.09(3) hearing, a question for which counsel did not know the answer, and a question which was ambiguous.

The sole issue in the case was the defendant's credibility. Because defense counsel had not taken steps to verify the convictions and have the circuit court rule on the admission of each conviction, the defendant's credibility was significantly damaged.[8]

---

[8] Sec. 904.04(2), Stats. 1983–84, provides:

"OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This

Although there is sufficient evidence in this case to sustain the conviction, the error allowing the defendant's

subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

We have on many occasions observed that "evidence of prior crimes may not be introduced to show the defendant's general bad character or his commission of other specific unconnected acts because such evidence has a tendency to prejudice the jury's mind and to lead them to conclude that because the defendant acted wrongly in the past it is likely he also committed the offense charged." *Kwosek v. State*, 60 Wis. 2d 276, 281, 208 N.W.2d 308 (1973). Because of the sensitive nature of such evidence and the policy that "the jury is not permitted to convict someone based on the inference that if he broke the law once he is likely to do so again," *State v. Rutchik*, 116 Wis. 2d 61, 67–68, 341 N.W.2d 639 (1984), there are rules with regard to when such evidence may be admitted to prove guilt.

Consistent with these rules, at the close of testimony, the jury was instructed as follows with regard to the prior crimes evidence:

"Evidence has been received to the effect that the defendant, Thomas L. Pitsch, has heretofore been convicted of a crime. This evidence was so received solely because it bears upon the credibility of the defendant as a witness. The fact of conviction is one that you may take into consideration in weighing his testimony and determining his credibility. It must not be used for any other purpose, and, particularly, you should bear in mind that conviction of the defendant of a crime at some previous time is no proof that he is guilty of the offense with which he is now charged." (16:176)

We assume that "a properly given admonitory instruction is followed," *State v. Leach*, 124 Wis. 2d 648, 370 N.W.2d 240 (1985), and that the "jury acted according to law," *Strickland v. Washington*, 104 S. Ct. at 2068. Although we recognize, as did the Supreme Court in *Francis v. Franklin*, —— U.S. ——, 105 S. Ct. 1965, 1976 n. 9 (1985), that "[c]ases may arise in which the risk of prejudice inhering in material put before the jury may be so great that even a limiting instruction will not adequately protect a criminal defendant's constitutional rights," we do not view the present case as falling within this category. Rather, we reach our conclusion here solely on the basis of the relation of the admitted evidence to the defendant's credibility—the determinative issue of the case.

credibility to be undermined in this way infected the trial. Because credibility was the central issue in this case, we conclude that the error had "a pervasive effect on the inferences to be drawn from the evidence" and "alter[ed] the entire evidentiary picture." *Strickland v. Washington,* 104 S. Ct. at 2069. Thus, despite the strong presumption of the reliability of the outcome, our confidence in the result is undermined because of "a breakdown in the adversarial process that our system counts on to produce just results." *Strickland v. Washington,* 104 S. Ct. at 2069. Under the circumstances of this case, there is a reasonable probability, defining a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome," *Strickland v. Washington,* 104 S. Ct. at 2068, that "but for counsel's unprofessional errors, the result of the proceeding would have been different."

Accordingly, we conclude that the defendant's federal constitutional rights were violated. The judgment and order of the circuit court are reversed, and the cause remanded to the circuit court for a new trial.

Although both the state and the defendant cite art. I, sec. 7 of the Wisconsin Constitution, neither party develops an argument based on the state constitution. The parties provide no history of the provision, which might enable us to determine the extent to which it was or was not intended to parallel the federal constitution; they provide no discussion of case law interpreting art. I, sec. 7; they provide no discussion of the purpose or application of the provision in terms of guaranteeing the quality of the legal profession or guaranteeing the reliability of the outcome in a given case.

The language of the federal and state constitutional provisions differs. The sixth amendment of the United States Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." Art. I, sec.

7 of the Wisconsin Constitution provides that "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel. . . ."

The parties point out that in most previous decisions the court simply never mentions either the state or federal constitution as the basis of the right to effective representation. Although in *State v. Harper*, 57 Wis. 2d 543, 559, 205 N.W.2d 1 (1973) (Hansen, J. concurring), Justice Hansen wrote in terms of the federal constitution, the majority made no reference to either the state or federal constitution. Neither does *Weatherall v. State*, 73 Wis. 2d 22, 242 N.W.2d 220, *cert. denied*, 429 U.S. 923 (1976), provide any clue about which constitution the court was interpreting. In *State v. Koller*, 87 Wis. 2d 253, 274 N.W.2d 651 (1979), this court specifically considered the question of effective assistance of counsel under the provisions of the sixth amendment. In so doing, however, the court relied in part on Wisconsin cases which had not so clearly designated the constitution on which they were relying. In *State v. Rock*, 92 Wis. 2d 554, 285 N.W.2d 739 (1979), and again in *State v. Fencl*, 109 Wis. 2d 224, 325 N.W.2d 703 (1982), the court never specified the federal or state source of the constitutional claim and relied primarily on Wisconsin cases construing effective assistance of counsel. Finally, in *State v. Felton*, 110 Wis. 2d 485, 499, 329 N.W.2d 161 (1983), the court identified both the federal and the state constitutions as sources of the right to effective assistance of counsel, but did not separate its analysis of the defendant's claim according to these two separate sources.

Since we have concluded that the defendant was denied his sixth amendment guarantee to effective assistance to counsel under the test set forth in *Strickland v. Washington*, we need not analyze the claim under the state constitution to protect the defendant's rights. Were we to consider the state constitutional issue, we would re-

648

quire more extensive briefing of the state constitutional claim.[9]

For the reasons set forth, we reverse the judgment and order of the circuit court and remand the cause to the circuit court for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded to the circuit court.

---

[9] Given the nature of the state constitutional law argument presented in this court, our position in the present case is not one of "unnecessarily invit[ing] Supreme Court review of state court judgments." *Massachusetts v. Upton,* —— U.S. ——, 104 S. Ct. 2085, 2090 (1984) (Stevens, J., concurring).