COURT OF APPEALS
DECISION
DATED AND FILED

May 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP395-CR**

Cir. Ct. No. **2016CF185**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

KUNLE FAMAKINWA, JR.,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Ozaukee County:  PAUL V. MALLOY, Judge.  *Affirmed.*

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kunle Famakinwa, Jr., appeals from a judgment convicting him of possession with the intent to deliver tetrahydrocannabinols (THC) in an amount of 200 grams or less and an order denying his postconviction motion seeking a new trial due to the ineffective assistance of trial counsel. He maintains that trial counsel performed deficiently in several ways, all of which improperly led the jury to find that he was guilty of possessing THC with the intent to deliver rather than for his own personal use. Because we conclude that none of trial counsel's allegedly deficient acts or omissions prejudiced Famakinwa, we affirm.

## BACKGROUND

¶2 Famakinwa crashed his sports utility vehicle (SUV) into a crowd gathered at a local festival in Cedarburg. He injured two pedestrians. Police arrived and ordered Famakinwa to exit his vehicle but he refused. The officers noticed the smell of marijuana. They described his behavior as "aggressive" and "resistive." Famakinwa told officers he was diabetic and suffering from low blood sugar. He was taken to the hospital for medical treatment. Test results revealed that Famakinwa had a detectable amount of THC in his blood.

¶3 Officers searched Famakinwa's vehicle and found a baggie of marijuana, a jar of marijuana nuggets, and a scale. They suspected that Famakinwa was involved in dealing marijuana. Famakinwa was charged with the following four counts: two counts of causing great bodily harm by the operation of a vehicle while having a detectable amount of a restricted controlled substance in his blood; possession with intent to deliver THC in an amount 200 grams or less; and possession of drug paraphernalia for the scale found in his SUV.

¶4 Before trial, counsel advised the court that Famakinwa would plead guilty to the charge of possessing drug paraphernalia. Counsel explained, "[W]e aren't going to argue about possession of drug paraphernalia. There was a scale in his car. It was his, and" he will plead "guilty to it beforehand and take it out of the mix." The parties agreed that the paraphernalia charge would not be submitted to the jury.

¶5 The remaining charges were tried to the jury. Officer Eric Weisenberger testified that he was waved down by several people near the crash. He observed Famakinwa sitting in the driver's seat of the SUV and smelled the strong odor of marijuana coming from inside. While standing next to the vehicle, he saw what appeared to be a plastic bag of marijuana sitting in the console cupholder.

¶6 Weisenberger testified that he later searched the SUV and found a large jar of marijuana and a scale in the arm of the console. Some of the discovered marijuana was in the form of nuggets. Weisenberger explained that he had seen that type of marijuana previously, and he described it as "high quality nuggets that people often like to sell."

¶7 Weisenberger testified that part of his training focused on the investigation of drug cases. A portion of his training involved periodic in-services and unique trainings dealing with how drugs are sold and held for resale in the community. Weisenberger testified that based on the individual packing of the drug, the scale, and the "mass quantity of marijuana that was found," he believed that the evidence was consistent "[m]ore for distribution" than "personal use." He confirmed that from his experience working in Cedarburg, it was a "very large amount" of marijuana.

¶8 Famakinwa testified that on the day of the crash, he purchased four ounces of medical marijuana "from a wellness center." He explained that to get the marijuana for a cheaper price, he had to buy an "abundant amount." Famakinwa told the jury that he had a scale in his vehicle because he previously bought marijuana and found he was "shorted some grams," so he used the scale to make sure he received the "proper weight" of the drug purchased. Famakinwa denied that he sold marijuana.

¶9 The State called Lieutenant Marshall Hermann as a rebuttal witness. Hermann, who had over sixteen years of law enforcement experience, testified about his duties investigating drug crimes as a lead detective for the Ozaukee County Antidrug Task Force and assisting the Milwaukee district office of the Drug Enforcement Administration. He managed cases for informants and undercover officers who purchased marijuana. He also received training through in-service events and materials.

¶10 Hermann explained to the jury the plant structure of marijuana and which portions contain the most THC, the active ingredient in marijuana. He testified that marijuana was generally sold by weight but could also be sold by the bud or nugget. He confirmed that he had "seen … a quantity of buds contained in a large jar and sold individually out of those[.]"

¶11 Hermann also testified about various indicia of drug distribution, explaining that weighing equipment, different types of packaging, and drug amounts were all indicators that the drug was being sold instead of being held for personal use. He testified that, typically, marijuana weighing over one-half ounce or one ounce was an indicator the drug was being sold and was not solely for personal use.

¶12    The jury found Famakinwa guilty of possession with intent to deliver THC, but acquitted him of the other two counts.[1]

¶13    After sentencing, Famakinwa filed a postconviction motion seeking a new trial on grounds that trial counsel was ineffective for failing to: (1) file a formal, written discovery demand; (2) request a ***Daubert***[2] hearing as to the officers who testified that the items found in Famakinwa's car were consistent with possession for distribution as opposed to personal use; (3) object to the officers' expert testimony; and (4) object to the officers' testimony about the scale found in Famakinwa's SUV.

¶14    The circuit court conducted an evidentiary ***Machner***[3] hearing. Trial counsel testified that he expected both Weisenberger and Hermann to offer testimony about various indicia of drug delivery. Counsel recalled that "multiple times" throughout his career, the State called officers to testify as lay experts to their personal experience about indicia of intent to deliver drugs. Counsel testified that he did not consider this evidence to be improper expert testimony as it was based on the officers' training and experience. For these same reasons, counsel did not file a ***Daubert*** motion. When asked about having Famakinwa plead to the paraphernalia charge, counsel explained, "Well, the jury's not contemplating another criminal charge. It was there. It was paraphernalia. Clean—I do not

---

[1] Famakinwa stipulated that there was a detectable amount of THC in his system. The apparently successful theory of defense was that Famakinwa's diabetes caused the accident.

[2] ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579 (1993).

[3] ***State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (where a defendant claims he or she received the ineffective assistance of trial counsel, a postconviction hearing "is a prerequisite … on appeal to preserve the testimony of trial counsel").

throw a bunch of crap at the wall, and I think that in that case it was—it was one less thing that the jury had to consider." Trial counsel admitted that there was nothing about the process of pleading guilty that would have prevented the jury from hearing about the scale, and he acknowledged that it was never suggested in any way that if Famakinwa pled to the paraphernalia charge, the scale would not be discussed at trial.

¶15 Famakinwa testified at the *Machner* hearing that he spoke with trial counsel about the decision to plead guilty to the paraphernalia charge and believed the scale would not be disclosed to the jury. Famakinwa did not state exactly what trial counsel said, but said his "understanding of it" was that the scale would not be discussed.

¶16 The circuit court denied the motion for postconviction relief, emphasizing the lack of prejudice: "The testimony of the officers was never going to be kept out. Never was." Additional facts taken from the *Machner* hearing are included in the discussion section.

## DISCUSSION

¶17 On appeal, Famakinwa maintains that he is entitled to a new trial due to trial counsel's ineffectiveness. The test for ineffective assistance of counsel has two prongs: (1) a demonstration that counsel's performance was deficient and (2) a demonstration that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a defendant must show specific acts or omissions of counsel that were "outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the prejudice prong, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of

6

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶18 Whether counsel's actions were deficient or prejudicial is a mixed question of law and fact. *Id.* at 698. The circuit court's findings of fact will not be reversed unless they are clearly erroneous. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). However, whether counsel's conduct violated the defendant's right to effective assistance of counsel is a legal determination, which this court decides de novo. *Id.* We need not address both prongs of the test if the defendant fails to make a sufficient showing on either one. *Strickland*, 466 U.S. at 697.

¶19 According to Famakinwa, trial counsel performed deficiently by failing to take several actions that would have led the jury to find that he possessed the THC solely for his own use, and therefore would have led to his acquittal. We reject each of his interrelated claims based on *Strickland*'s prejudice prong.

¶20 Famakinwa first argues that counsel provided ineffective assistance by "failing to obtain pretrial discovery." We agree with the State that the framing of this argument mischaracterizes trial counsel's actions. While trial counsel did not file a written discovery demand, he did obtain the discovery materials. At the *Machner* hearing, trial counsel testified that he did not file a written discovery demand because that was something one would do at the beginning of a case. By the time he was retained, discovery had been exchanged and was ongoing. Trial counsel repeatedly explained that he "already had discovery," and that the prosecutor's office was providing supplemental discovery to him on an ongoing basis. Famakinwa has not shown any prejudice from the lack of a written discovery demand.

¶21   Famakinwa asserts that had trial counsel filed a formal discovery demand, the State would have been obligated to provide a notice of expert along with a summary of Weisenberger's expected testimony. According to Famakinwa, the notice would have caused trial counsel to object to Weisenberger's testimony that the high quality marijuana nuggets, individually packaged marijuana, scale, and drug amounts found in Famakinwa's possession were consistent with distribution.

¶22   Here again, Famakinwa does not establish prejudice. First of all, there is no reason to believe that receiving the notice of expert would have led trial counsel to object. To the contrary, when faced with Weisenberger's trial testimony, counsel did not object. This is in line with trial counsel's *Machner* hearing testimony that based on his experience in "plenty of drug trials[,]" he expected Weisenberger to opine that the items found in Famakinwa's SUV were consistent with drug distribution and further, that counsel did not consider this testimony objectionable. Second, there is no reason to believe that the circuit court would have sustained trial counsel's hypothetical objection. Indeed, after considering the *Machner* hearing evidence, the court explicitly found that Weisenberger's testimony was proper and admissible.

¶23   Next, Famakinwa argues that trial counsel performed deficiently by failing to request a *Daubert* hearing challenging the expert testimony of Officer Weisenberger and Lieutenant Hermann, or in the alternative, for failing to object to their testimony on *Daubert* grounds.

¶24    The admissibility of expert testimony is governed by WIS. STAT. § 907.02(1) (2019-20),[4] which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

This version of the statute was enacted in 2011 to embody *Daubert*'s reliability standard. *State v. Giese*, 2014 WI App 92, ¶17, 356 Wis. 2d 796, 854 N.W.2d 687. It assigns to the circuit court a gate-keeping function "to ensure that the expert's opinion is based on a reliable foundation and is relevant to the material issues." *Id.*, ¶18.

¶25    Famakinwa asserts that if trial counsel had challenged the expert testimony or lodged objections under *Daubert*, the circuit court would have ruled the testimony inadmissible. The record does not support this assertion. The circuit court properly determined at the *Machner* hearing that the officers' testimony was admissible. Both officers testified about their qualifications and tied their training and experience to their familiarity with how drugs are consumed, packaged, and delivered. They applied their training and experience to the facts of this case. Neither filing a *Daubert* motion nor objecting at trial would have excluded the officers' testimony or limited its scope, and therefore,

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Famakinwa has again failed to show prejudice from counsel's allegedly deficient performance.

¶26 We reject Famakinwa's contention that the expert testimony was inadmissible because the officers' testimony about their qualifications was vague, and neither officer supported their opinion with scientific studies or statistics. We agree with the State that neither *Daubert* nor any of the other authority cited by Famakinwa requires that a methodology or opinion be supported by scientific studies or statistics.

¶27 We also reject Famakinwa's argument that trial counsel should have filed a *Daubert* motion or lodged objections based on *Daubert* because there was no reason not to do so. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (Supreme Court precedent does not establish a "nothing to lose" standard for ineffective assistance of counsel claims). Famakinwa was not prejudiced by trial counsel's failure to file meritless motions or lodge meritless objections. *See State v. Reynolds*, 206 Wis. 2d 356, 369, 557 N.W.2d 821 (Ct. App. 1996).

¶28 Next, relying on the fact that he pled guilty to the paraphernalia charge, Famakinwa argues that trial counsel was ineffective for failing to object to references to the scale found in Famakinwa's vehicle. We are not persuaded. Though the paraphernalia charge was not before the jury, the scale was relevant to the issue of whether he possessed THC with the intent to deliver. With or without the paraphernalia charge, the jury would have inevitably heard that a scale was found in Famakinwa's vehicle. Famakinwa has not shown prejudice from trial counsel's failure to lodge a meritless objection.

¶29 Famakinwa asserts that his plea to the paraphernalia charge constituted an agreement with the State that evidence of the scale would not be

presented to the jury. This contention is contradicted by the record. At trial, although the parties confirmed that the drug paraphernalia charge would not be submitted to the jury, neither attorney indicated that the jury would be precluded from hearing about the scale found in Famakinwa's possession. At the *Machner* hearing, trial counsel testified that he did not recall any such agreement or any discussions with Famakinwa about pleading to the drug paraphernalia charge in exchange for the parties not discussing the scale at trial. Trial counsel testified about his strategic reasons for taking the paraphernalia charge "out of the mix." None was based on preventing the jury from hearing about the scale in Famakinwa's vehicle. It defies common sense that the State would agree to forego mention of the scale, which was probative on the issue of intent to deliver, in exchange for Famakinwa's plea to a provable misdemeanor. The only evidence of this agreement is Famakinwa's self-serving *Machner* hearing testimony, which the circuit court implicitly rejected.

¶30   Finally, we reject Famakinwa's argument that the cumulative effect of trial counsel's alleged errors entitles him to a new trial. We have concluded that none was prejudicial under *Strickland*. Counsel's choice not to file a written discovery demand resulted only in counsel not receiving a witness disclosure that he foresaw and was ready to confront. Pursuing a *Daubert* challenge or lodging meritless objections to admissible evidence would have had no effect. Objecting to mention of the scale found in Famakinwa's possession would have failed because the evidence was relevant to the charge of possession with intent to deliver. Whether viewed separately or together, the acts and omissions complained of do not undermine our confidence in the outcome of Famakinwa's trial. "Zero plus zero equals zero." *Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).

11

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.