# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 21, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** 2021AP330
2021AP331

Cir. Ct. Nos. 2020TP11
2020TP12

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

NO. 2021AP330

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.S., PERSON UNDER THE AGE OF 18:

C.W.,

   PETITIONER-RESPONDENT,

 V.

M.M. F/K/A M.S.,

   RESPONDENT-APPELLANT.

---

NO. 2021AP331

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.G., PERSON UNDER THE AGE OF 18:

C.W.,

   PETITIONER-RESPONDENT,

V.

M.M. F/K/A M.S.,

RESPONDENT-APPELLANT.

---

APPEALS from orders of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Affirmed*.

¶1 GUNDRUM, J.[1] M.M. appeals from orders terminating her parental rights to her children, M.S. and M.G., and denying her postdisposition motion. For the following reasons, we affirm.

## *Background*

¶2 In private actions, C.W. filed petitions for termination of M.M.'s parental rights to M.S. and M.G. on the grounds of child abuse, failure to assume parental responsibility, and abandonment. The circuit court granted the petitioner summary judgment on the ground of abandonment and found M.M. to be unfit as a parent.

¶3 At the disposition hearing, the parties indicated that an agreement had been reached by which M.M. would voluntarily consent to the termination of her parental rights to M.S. and M.G., resulting in the removal of the prior finding of unfitness. M.M. was questioned by her counsel, C.W.'s counsel, and the court

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version.

and testified to voluntarily consenting to the termination of her parental rights. The court accepted that consent and ultimately terminated her parental rights to the children.

¶4      M.M. subsequently moved for postdisposition relief, alleging that her consent was not voluntary and informed and that her counsel performed ineffectively.  The circuit court denied the motion following an evidentiary hearing.  M.M. appeals.

## *Discussion*

¶5      M.M. claims that her consent "to voluntarily terminate her parental rights was not voluntary and informed"—specifically asserting that she did not have "full knowledge of her alternatives"—and that both of her trial counsel performed ineffectively in representing her.[2]  She points to the fact that at the disposition hearing M.M. testified that she was consenting to voluntary termination of her parental rights in part because she was "advised that if I was to take it to jury trial and I lost it there was a possibility that my twins [two other children of M.M.—not M.S. or M.G.] could be removed from my home."  This concern of M.M. related to what would happen with regard to the twins if the "finding of unfitness continued."

*Relevant Law*

¶6      A parent may voluntarily consent to terminate his or her parental rights under WIS. STAT. § 48.41.  When a "parent appears personally at the hearing

---

[2]  One counsel represented M.M. in relation to the petition to terminate her rights to M.S., and another counsel represented her in relation to the petition to terminate her rights to M.G.

and gives his or her consent to the termination of his or her parental rights," the court "may accept the consent only after the judge has explained the effect of termination of parental rights and has questioned the parent, or has permitted an attorney who represents any of the parties to question the parent, and is satisfied the consent is *informed and voluntary*." Sec. 48.41(2)(a) (emphasis added).

¶7      In *T.M.F.*, our supreme court "set forth the basic information the circuit court must ascertain to determine on the record whether consent is voluntary and informed." *T.M.F. v. Children's Serv. Soc'y of Wis.*, 112 Wis. 2d 180, 196, 332 N.W.2d 293 (1983). Among other things not relevant here, that information includes:

> 2. the parent's understanding of the nature of the proceedings and the consequences of termination, including the finality of the parent's decision and the circuit court's order;
>
> ….
>
> 5. whether any promises or threats have been made to the parent in connection with the termination of parental rights;
>
> 6. whether the parent is aware of the significant alternatives to termination and what those are.

*Id.* at 196-97.

¶8      Whether a person's consent to terminate his or her parental rights was informed and voluntary is a legal conclusion. *Id.* at 188. That legal conclusion, however, is "derived from and intertwined with the [circuit] court's factual inquiry during which the [circuit] court has had the opportunity to question and observe the witnesses." *Id.* Because the circuit court has had this opportunity, it is "better prepared to reach a just and accurate conclusion than is an appellate court." *Id.* "Thus, on review of a [circuit] court's conclusion that the

parental consent is voluntary and informed 'the appellate court should give weight to the [circuit] court's decision, although the [circuit] court's decision is not controlling.'" *Id.* (citation omitted).

¶9      In order to prove ineffective assistance of counsel, M.M. bears the burden to show both that counsels' performance was deficient and that the deficient performance prejudiced her. *See A.S. v. Dane County*, 168 Wis. 2d 995, 1005, 485 N.W.2d 52 (1992); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). If she fails to prove either prong, we need not address the other. *See Strickland*, 466 U.S. at 700.

¶10      Whether a parent proves ineffective assistance of counsel is a mixed question of fact and law. *See State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). Factual determinations of the circuit court will be upheld unless they are clearly erroneous. *Id.* at 634. Whether trial counsel's performance was deficient and whether it prejudiced the parent are questions of law we review de novo. *See id.*

¶11      To prove deficient performance, the parent must show that counsel's specific acts or omissions were "outside the wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. There is a strong presumption that a parent received adequate assistance and that counsel's decisions were justified in the exercise of reasonable professional judgment. *See State v. Domke*, 2011 WI 95, ¶36, 337 Wis. 2d 268, 805 N.W.2d 364; *State v. Kimbrough*, 2001 WI App 138, ¶¶31–35, 246 Wis. 2d 648, 630 N.W.2d 752. Counsel's performance is deficient only if the parent proves that counsel's challenged acts or omissions were objectively unreasonable under all the circumstances of the case. *See Kimbrough*, 246 Wis. 2d 648, ¶35. Scrutiny of

trial counsel's decisions, conduct and overall performance is highly deferential. *Pitsch*, 124 Wis. 2d at 637. In this case, we conclude counsel did not perform deficiently, so we do not consider the question of prejudice.

*Voluntary Consent to Termination and Ineffective Assistance*

¶12 Relevant testimony from the hearing includes the following. When asked why she was in court on that day, M.M. stated: "So I can terminate my rights to my daughter and my son." She further testified:

> [Counsel for M.M.:]   Have any promises been made to you to influence your decision to terminate your parental rights?
>
> [M.M.:]          No.
>
> [Counsel:]      Have any threats been made to you to influence your decision to terminate your rights?
>
> [M.M.:]          No.
>
> [Counsel:]      Have you received any threats, money or valuables to influence your decision?
>
> [M.M.:]          No.
>
>     .…
>
> [Counsel:]      Have you felt pressured by anyone to terminate your rights?
>
> [M.M.:]          No.
>
> [Counsel:]      Has anyone told you that if you do not terminate your rights voluntarily the State or County will try to take your children away?
>
> [M.M.:]          Yes.
>
> [Counsel:]      Who has told you that?
>
> [M.M.:]          I was advised that if I was to take it to jury trial *and I lost* it there was a *possibility* that my twins could be removed from my home.

[Counsel:]    Do you understand that if the State or County tried to take your child away you would be entitled to a lawyer and that you would not have to pay for that lawyer?

[M.M.:]    Yes

[Counsel:]    *Do you understand that if you do not terminate your parental rights voluntarily the State or County may proceed with an involuntary termination of parental rights petition?*

[M.M.:]    *Yes.*

    ….

[Counsel:]    And *after considering all of the decisions* and all of the facts in the record is it still your right [sic] to proceed with a voluntary termination of your parental rights at this time?

[M.M.:]    *Yes.*

[Counsel:]    Can you state in your own words why you're making this decision?

    ….

[M.M.:]    Because it's in the best interest of my children.  Yes.

[Counsel:]    And so do you feel like this is … in the best interest of your children to terminate?

[M.M.:]    I guess.

    ….

[Counsel for petitioner:]    [Y]ou understand in essence based on your testimony that you are ultimately asking the Court to accept your voluntary termination; is that correct?

[M.M.:]    Yes.

*[Counsel:]    You understand that you could have had a court trial today on the best interest phase and that it is a potential that your rights would not have been terminated? Do you understand that?*

[M.M.:]    *Yes.*

7

[Counsel:] And you're still asking the Court to accept your voluntary termination; is that correct?

[M.M.:] Yes.

....

[Court:] You have a set of twins right now don't you?

[M.M.:] Yes.

[Court:] Okay. So earlier you said that someone had talked about the fact that they could take away your twins. You are referencing two other children, not the two children we're dealing with; correct?

[M.M.:] Yes.

[Court:] Okay. And … that answer was because you had talked with your attorneys about the effect of what would happen if the … finding of unfitness continued?

[M.M.:] Yes.

[Court:] Okay. So that was something with your attorneys that you today do understand; correct?

[M.M.:] Yes.

(Emphasis added.)

¶13 On appeal, M.M. asserts that her counsels' performance was deficient because counsels' "statements to M.M. were misleading." This is so, M.M. claims, because terminating M.M.'s parental rights in this case "could [only] be used to terminate M.M.'s parental rights to her twin[s] [under WIS. STAT. § 48.415(10)] … if within 3 years after the involuntary termination orders in these cases, had they happened, her twins were placed on a CHIPS order under" WIS. STAT. § 48.13 (2), (3) or (10).[3] M.M. now claims that in her testimony at the

_____

[3] WISCONSIN STAT. § 48.415 provides that one of the grounds for termination of parental rights is:

(continued)

8

disposition hearing she "essentially stated that her attorneys did not explain that there would need to be a subsequent CHIPS finding against her twins before the prior involuntary termination ground could be used to terminate her rights to her twins."

¶14    M.M. ignores the testimony of her counsel (who represented M.M. on the petition related to M.G.)—and findings of the circuit court—at the postdisposition hearing.  At that hearing, counsel testified that prior to the disposition hearing, she and M.M.'s other counsel (who represented M.M. on the petition related to M.S.) "from the very beginning" explained to M.M. "that one of the grounds for involuntary termination of parental rights, ground [ten], is prior involuntary termination, and part of that statute requires that a CHIPS order be in place.  So we explained to her that her other children could be at risk only if the County of Racine had issue or had taken out a CHIPS order against [the twins]. So that was something to keep in mind when we are proceeding to trial."  Counsel

---

**(10)**    PRIOR INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO ANOTHER CHILD.  Prior involuntary termination of parental rights to another child, which shall be established by proving all of the following:

(a)  That the child who is the subject of the petition has been adjudged to be in need of protection or services under [WIS. STAT. §] 48.13(2), (3) or (10); or that the child who is the subject of the petition was born after the filing of a petition under this subsection whose subject is a sibling of the child.

(b)  That, within 3 years prior to the date the court adjudged the child to be in need of protection or services as specified in par. (a) or, in the case of a child born after the filing of a petition as specified in par. (a), within 3 years prior to the date of birth of the child, a court has ordered the termination of parental rights with respect to another child of the person whose parental rights are sought to be terminated on one or more of the grounds specified in this section.

9

explained that after the court granted summary judgment on the ground of abandonment and M.M.'s interlocutory appeal on that issue was not accepted by us "at that point we had a conversation with [M.M.] about what would happen at disposition and how the finding of unfitness could potentially impact her…. [M.M.'s other counsel] and I advised her about what that finding could do, and [M.M.] agreed that she should enter a voluntary plea to remove the finding of unfitness." Counsel further testified that they had "several" specific discussions in which counsel explained "that there needed to be a CHIPS order in place regarding her twins." Counsel added again that she and M.M.'s other counsel "explained that if there was a CHIPS order in place … that would fall under that [subsec. (10) of WIS. STAT. § 48.415] ground." Counsel confirmed that she gave "generalized examples of what may bring about a CHIPS case" and that M.M. "appear[ed] to understand" what counsel was discussing with her. Counsel further confirmed that she had discussed with M.M. the impact of a finding of unfitness and that "it could potentially affect her, not that it would affect her." Counsel again confirmed that M.M. appeared to understand this. In her own testimony at the postdisposition hearing, M.M. acknowledged, as she did at the disposition hearing, that counsel only represented to her that it was a "possibility" that a finding of unfitness and related termination of her parental rights to M.S. and M.G. could have a future effect with regard to her twins.

¶15    Also overlooked by M.M. in her briefing on appeal is the fact that the court found counsel's testimony credible. The court found that counsel only informed M.M. that it was a "possibility" that a finding of unfitness in this case could have a future impact with regard to her parental rights to the twins and that counsel "indicated [to M.M.] that this could happen only if there was a CHIPS case against the twins." The court specifically expressed that it "d[id] not find that

10

the advice given [by counsel] was in any way incorrect [or] … deficient." The court concluded that counsels' performance was not deficient in any way and that when M.M. consented to the voluntary termination of her parental rights, she was properly informed and aware that there was a "possibility" that if she did not consent and, with that, secure the removal of the unfitness finding and involuntary termination, her rights to her other two children—the twins—could potentially be affected in the future.

¶16 M.M.'s entire appeal essentially rests upon her professed premise that her testimony at the disposition and postdisposition hearings "suggest that M.M. believed that it was inevitable that [the twins] would be removed from her care should she continue with an involuntary termination." Her appeal ultimately fails because this premise is faulty. The circuit court properly found, consistent with precisely what M.M. stated at both hearings, that she did not believe removal of the twins was "inevitable" but that she correctly believed that removal would be a "possibility" if she continued challenging the termination petition and her parental rights ended up being terminated involuntarily. Furthermore, it is undisputed that M.M. also testified at the disposition hearing that she understood that if she continued to challenge the termination of her parental rights at the disposition hearing, she might prevail, in which case her rights to M.S. and M.G. would not have been terminated and her rights to her twins also would not be impacted. The circuit court correctly determined that M.M.'s consent to the termination of her parental rights in this case was voluntary and informed.

¶17 Because we relatedly conclude that counsel for M.M. did not "mislead" M.M. but instead properly informed her as to the potential impact on her rights to the twins and the circumstances under which those rights could be

11

affected if she continued to challenge the termination petitions instead of voluntarily consenting to termination, we also conclude that M.M. has failed to show that her counsel performed deficiently. Thus, her ineffective assistance of counsel challenge also fails. The circuit court's orders terminating M.M.'s parental rights to M.S. and M.G. are affirmed.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.