(90–CV–004581) CITY OF MILWAUKEE, Plaintiff-
Respondent-(In T. Ct.)-Appellant,

v.

Chet N. KILGORE, Defendant-Appellant-(In T. Ct.)-
Respondent-Petitioner,

Matthew J. TREWHELLA, Scott B. Patterson, Ralph N.
Ovadal, Daoud Faraj, Robert C. Braun, Wayne E.
Rohde and all others similarly situated, Plaintiffs-
Respondents-Petitioners,

v.

Ronald R. FIEDLER, Secretary, Department of Trans-
portation of State of Wisconsin, Honorable William J.
Panagis, Honorable Stanley A. Miller and Honorable
James A. Gramling, Jr., Judges of Municipal Court of
City of Milwaukee and City of Milwaukee,
Defendants-Appellants.

Supreme Court

*No. 92–0949. Oral argument April 4, 1995.—Decided June 7,
1995.*

(Also reported in 532 N.W.2d 690.)

171

■■■■■■■■■■

For the defendant-appellant-(In T.Ct.)-respondent-petitioners and plaintiffs-respondents-petitioners there were briefs by *Richard F. Tyson,* Baileys Harbor and *George E. Rice,* Muskego, of counsel, and oral argument by *Richard F. Tyson* and *George E. Rice.*

For the plaintiff-respondent-(In T.Ct.)-appellant-respondent and defendants-appellants there was a brief by *Rudolph M. Konrad,* deputy city attorney, *Grant F. Langley,* city attorney, *Stephen J. Nicks,* assistant attorney general and *James E. Doyle, Jr.,* attorney general and oral argument by *Susan E. Lappen,* assistant city attorney.

Amicus curiae brief was filed by *Claire Silverman,* assistant legal counsel, Madison, for the League of Wisconsin Municipalities.

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Trewhella v. Fiedler,* 185 Wis. 2d 499, 517 N.W.2d 689 (Ct. App. 1994), which reversed a judgment of the circuit court for Milwaukee County, John E. McCormick, circuit judge. The petitioners, all members of the class of individuals who have had their drivers' licenses suspended for failure to pay fines imposed for non-traffic related municipal ordinance violations, seek review of a court of appeals decision which reversed the trial court's conclusion that municipal court judges have no statutory authority to order such suspensions and, if they do, that the statutes involved are unconstitutional. Although we affirm the decision of the court of appeals because we, too, conclude there is statutory authority for the municipal courts' practice of sus-

pending drivers' licenses to compel payments of fines issued for non-traffic offenses, and because we conclude that the grant of power to municipal courts is constitutional, we do so on grounds not relied upon by the court of appeals.

## I.

The underlying facts are undisputed. Petitioners were all found guilty by City of Milwaukee municipal judges of city ordinance violations for either disorderly conduct or trespass; they were each ordered to pay fines;[1] at the time of sentencing, each was informed that failure to pay the fine in 60 days would result in suspension of their driver's license until the fine was paid, but not to exceed five years. None of the petitioners paid the fines nor did they seek to avoid suspension of their operating privileges for good cause or because of indigency. No one contends that they were not warned in accordance with the provisions in the statute. Each petitioner received an order of suspension from the Department of Transportation stating that their license had been suspended for five years for failure to pay their fine; the orders of suspension further provided that the period of suspension "can be reduced by payment of the forfeiture."

Petitioner Kilgore appealed to the circuit court for a trial *de novo* of his conviction for disorderly conduct in violation of sec. 106–1, Milwaukee Code of Ordinances. Petitioners Trewhella, Patterson, Ovadal, Faraj, Braun, and Rohde commenced a class action pursuant to 42 U.S.C secs. 1983 and 1988 against the Secretary of Transportation, three municipal judges and the City of Milwaukee for declaratory judgment of the unconsti-

---

[1] The fines imposed ranged from $25 to $266.

tutionality of the suspensions and the statutes which authorized them. These cases were consolidated.

On motion for summary judgment Defendant-Appellant Kilgore and plaintiffs Trewhella, et al., moved the circuit court for declaratory judgment, and for mandatory and prohibitory permanent injunctions against further suspension orders, for failure to pay a fine imposed for a non-traffic related offense. Petitioners argued that suspensions authorized under secs. 800.09[2] and 800.095,[3] Stats., are unlawful when applied to coerce payment of fines imposed for non-

---

[2] Section 800.09, Stats., provides in part:

**Judgment; failure to appear; plea of guilty.**

**(1)** JUDGMENT. If a municipal court finds a defendant guilty it may render judgment by ordering . . . payment of a forfeiture . . . .. If the judgment is not paid, the court may proceed under par. (a), (b) or (c) or any combination of those paragraphs as follows:

(a) The court may defer payment of any judgment or provide for instalment payments. At the time the judgment is rendered, the court shall inform the defendant, orally and in writing, of the date by which restitution and the payment of the forfeiture, the penalty assessment . . . and of the possible consequences of failure to do so in timely fashion, including imprisonment, as provided in s. 800.095, or suspension of the defendant's motor vehicle operating privilege, as provided in par. (c), if applicable. . . .

. . .

(c) The court may suspend the defendant's operating privilege, as defined in s. 340.01(40), until restitution is made and the forfeiture, assessments and costs are paid, if the defendant has not done so within 60 days after the date the restitution or payments or both are to be made under par. (a) and has not notified the court that he or she is unable to comply with the judgment, as provided under s. 800.095(4)(a), except that the suspension period may not exceed 5 years. The court shall take possession of the suspended license and shall forward the license, along with a notice of the suspension clearly stating that the suspension is for failure to comply with a judgment of the court, to the department of transportation.

Section 340.01(40), Stats., provides in part:

traffic related offenses because such suspensions are expressly prohibited by sec. 343.30(5), which provides

"Operating privilege" means, in the case of a person who is licensed under ch. 343, the license, including every endorsement and authorization to operate vehicles of specific vehicle classes or types, instruction permit, and temporary, restricted or occupational license granted to such person . . ..

[3] Section 800.095, Stats., provides in part:

**Nonpayment of judgment or noncompliance with work order; further proceedings.**

(1) NONPAYMENT OR NONCOMPLIANCE. If the defendant does not comply with the judgment of the court under s. 800.09(1) or fails to comply with the community service work order under s. 800.09(1) (b), the court shall issue a warrant to arrest the defendant and bring him or her before the court or a summons ordering the defendant to appear in court, or both. The defendant may be incarcerated prior to the court appearance.

. . .

(4) HEARING; COURT ORDER. (a) If the defendant appears before the court pursuant to a warrant or summons issued under sub. (1) or the defendant otherwise notifies the court that he or she is unable to comply with the judgment or community service work order, the court shall conduct a hearing. If the defendant failed to pay the forfeiture . . . the court shall determine if the defendant is unable to comply with the judgment for good cause or because of the defendant's indigence . . ..

(b) If the defendant fails to appear before the court for a hearing conducted under par. (a) or if the court determines at a hearing under par. (a) that the failure of the defendant to comply with the judgment is not for good cause, the court shall order one of the following:

1. That the defendant be imprisoned until the forfeiture assessments and costs are paid, except that the defendant reduces the amount owed at a rate of at least $25 for each day of imprisonment . . ..

2. That the payment schedule or judgment be modified, suspended or permanently stayed.

3. That the defendant perform community service work for a public agency or a nonprofit charitable organization designated by the court . . ..

in part: "No court may suspend or revoke an operating privilege except as authorized by this chapter or chs. 48, 345 or 351 or s. 161.50."[4] Petitioners further argued that such suspensions violate the due process guarantees of the Fifth and Fourteenth Amendment, and the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and Article I, secs. 1 and 6 of the Wisconsin Constitution. By Order, dated January 9, 1992, the circuit court granted petitioner's motion for summary judgment concluding: (1) secs. 800.09 and 800.095, Stats., were unlawful when applied to non-traffic related offenses because the legislature failed to amend sec. 343.30(5) to include ch. 800 suspensions; (2) under sec. 755.045, Stats.,[5] municipal courts are without jurisdiction to suspend drivers' licenses because jurisdiction is exclusive to actions and proceedings arising under municipal ordinances; (3) ch. 800 suspensions are improper debt collection measures; (4) ch. 800 suspensions are an unreasonable exercise of police power because there is a disproportion between the offenses charged, the

4. That the defendant's operating privilege, as defined in s. 340.01(4), be suspended until the judgment is complied with, except that the suspension period may not exceed 5 years.

(Emphasis added.)

[4] Section 343.30(5), Stats., refers to the following: Chapter 48, Children's Code; ch. 345, Vehicles—Civil and Criminal Liability; ch. 351, Habitual Traffic Offenders; and sec. 161.50, Stats., Suspension or revocation of operating privilege *(Uniform Controlled Substances Act)*.

[5] Section 755.045, Stats., provides in part:

(1) A municipal court has exclusive jurisdiction over an action in which a municipality seeks to impose forfeitures for violations of municipal ordinances of the municipality that operates the court . . ..

harm to the public, the maximum amount of the fines authorized under the ordinances, and the duration and severity of the five-year license suspensions; (5) ch. 800 suspensions are excessive penalties in violation of the Eighth and Fourteenth Amendments to the United States Constitution; and (6) ch. 800 suspensions constitute an unlawful delegation of power to municipal courts in violation of Article IV, sec. 14 of the Wisconsin Constitution. The circuit court ordered reinstatement of the driver's license of each petitioner and ordered the Secretary of the Department of Transportation to reinstate the drivers' licenses of all similarly situated persons. In addition, the Secretary and the Milwaukee municipal judges were enjoined from suspending drivers' licenses for nonpayment of forfeitures imposed for non-traffic related offenses. By stipulation, to avoid substantial expense to the Department of Transportation,[6] the mandate was partially stayed; the Secretary agreed to reinstate on application by any member of the class that person's driver's license. Judgment was entered on March 30, 1992. Thereafter, the city, the municipal judges, and the Secretary filed a joint appeal. On May 17, 1994, the court of appeals reversed on all issues, concluding that: (1) the legislature intended to include, but inadvertently omitted, sec. 800.09 and 800.095 from the list of exceptions provided in sec. 343.30(5) authorizing driver license suspen-

---

[6] The stipulation, filed March 30, 1992, provides in part:

That these parties feel that this stay is appropriate given the fact that it would cost approximately $40,000 for the State to effect the reinstatement (none of which is recoverable) and an additional $40,000 to undo the reinstatement should the appeal be successful. The additional $40,000 would not be recoverable either.

sions;[7] (2) the statutory grant of authority is constitutional; and, (3) municipal courts have jurisdiction to suspend drivers' licenses as authorized by secs. 800.09 and 800.095.[8] We granted review.

## II.

Petitioners argue the circuit court correctly held that, ch. 800 suspensions are excessive penalties[9] in violation of the Eighth and Fourteenth Amendments and that there is no relationship, rational or otherwise, between the offenses for which they were fined and the suspension of their drivers' licenses. According to petitioners, the goal of statewide traffic safety, which they allege to be the sole purpose for suspending drivers' licenses, is not furthered when applied to persons who fail, as they did, to pay fines imposed for violations of non-traffic related municipal ordinances such as disorderly conduct and trespass. Petitioners contend that when the only purpose of a license suspension is, as here, to coerce payment of fines imposed for non-traffic related offenses, such purpose constitutes an unlawful use of the police power as a collection measure. Nor,

---

[7] The court of appeals concluded that the "purpose of each statute . . . logically compels our conclusion" that the absence of any reference to ch. 800 suspensions in sec. 343.30(5), Stats., "can only have been the result of legislative inadvertence."

[8] Although we do not separately address the jurisdiction issue raised by petitioners because we conclude that there is statutory authority for the municipal court practice of suspending drivers' licenses and, that said authority is constitutional, we nonetheless point out that ch. 800 suspensions are established for the purpose of aiding the municipal courts in their exercise of ordinance enforcement jurisdiction.

[9] Petitioners have not objected to the amount of the fines imposed for their conviction of the underlying offenses.

they contend, are the suspensions equivalent to an order of contempt, because to label them as such, "confuses money judgments with disobedience to court orders or injunctions." *Petitioner's Brief* at 23.

Additionally, petitioners argue that, because the language of sec. 343.30(5), Stats., is plain and unambiguous, the statute should be given effect without resort to judicial construction. Petitioners ask this court to find that the prohibitory language in sec. 343.30(5), supersedes the express grant of authority in ch. 800. In further support for its plain meaning argument, petitioners point to a series of legislative amendments to sec. 343.30(5), which, through time, have expanded the authority of courts to suspend a driver's license, but which do not include reference to ch. 800 suspensions. The omission, they conclude, is presumed to be intentional and, therefore, the only means available to the state to collect unpaid fines for municipal ordinance violations is the civil judgment procedure set forth in sec. 800.095(7), Stats. This section provides:

> USE OF ORDINARY CIVIL REMEDIES. In addition to the procedures under this section, a municipality may enforce the judgment in the same manner as for a judgment in an ordinary civil action.

Respondents, City of Milwaukee, Secretary of the Department of Transportation, and the Milwaukee municipal court judges named in this action, agree with the court of appeals' conclusion that, ch. 800 suspensions satisfy the rational basis test, i.e., secs. 800.09 and 800.095, Stats., are reasonably related to accomplishing a legitimate state interest. Respondents contend the following legitimate purposes underlie the grant of authority conferred in ch. 800: (1) enforcement

181

of municipal court forfeiture orders; (2) implementation of court orders through a range of enforcement alternatives, e.g., forcing compliance without imposing a jail term; and (3) preserving the integrity of municipal courts. In light of these purposes, respondents characterize secs. 800.09 and 800.095 as "remedial" statutes because they assist in enforcing rights or redressing injuries. *See Chappy v. LIRC,* 128 Wis. 2d 318, 324, 381 N.W.2d 552 (1985) *(quoting* 3 C. Sands, STATUTES AND STATUTORY CONSTRUCTION, sec. 60.02 (4th Ed. 1974)).

Respondents argue that when, as here, there is an apparent conflict or inconsistency between two statutes the court must construe them in a manner that will harmonize them in order to give each full force and effect. *State Central Credit Union v. Bigus,* 101 Wis. 2d 237, 304 N.W.2d 148 (Ct. App. 1981). Respondents essentially adopt the court of appeals' conclusion that, failure to include ch. 800 suspensions in sec. 343.30(5), Stats., was merely "legislative inadvertence" which, in turn, requires the court to harmonize the conflicting provisions by reading ch. 800 suspensions into sec. 343.30(5).

Further, respondents point out that the plain language in sec. 800.095(7), Stats, providing that, "in addition to" the procedures in this section, a municipality may use the civil judgment procedure to enforce its judgments, confirms the remedial purpose of secs. 800.09 and 800.095 because it underscores a legislative intent to provide municipal courts with additional procedures and options if a defendant fails to pay a fine.

## III.

Two issues are presented on review: whether there is statutory authority for municipal courts to suspend

drivers' licenses for failure to pay fines issued for non-traffic related municipal ordinance violations; and, if so, whether the statutes are constitutional. We review both issues *de novo. State v. Randall,* 192 Wis. 2d 800, 824, 532 N.W.2d 94 (1995).

## Statutory Construction & Legislative History

Petitioners contend there is no statutory authority for the municipal court's practice of suspending drivers' licenses because sec. 343.30(5), Stats., prohibits any suspensions which are not expressly included in that subsection, and ch. 800 suspensions are not among the exceptions listed in sec. 343.30(5).

The parties agree that, on its face, sec. 343.30(5), Stats. is clear. This section provides, "[n]o court may suspend or revoke an operating privilege except as authorized by this chapter or ch. 48, 345 or 351, or s. 161.50." According to petitioners, the clarity of the prohibition mandates the conclusion that sec. 343.30(5) supersedes any statute purporting to confer authority on a court to suspend drivers' licenses. We disagree for several reasons.

Petitioners ignore the obvious: ch. 800 suspensions are authorized by language which is as clear as the prohibitory language in sec. 343.30(5), Stats. The instant case involves two statutes which, although clear and unambiguous when read in isolation, appear to be inconsistent when considered together. When two laws are, as here, inconsistent the intent of the legislature should control the interpretation. *Phillips v. Wisconsin Personnel Comm'n,* 167 Wis. 2d 205, 217, 482 N.W.2d 121 (Ct. App. 1992). When determining legislative intent, we must assume that lawmakers knew the law in effect at the time they acted. *Wood v.*

*American Family Mut. Ins. Co.,* 148 Wis. 2d 639, 646, 436 N.W.2d 594 (1989). For the reasons we explain below, we conclude that lawmakers intended sec. 343.30(5), Stats., (formerly sec. 85.08(42) (1955)), and secs. 800.09 and 800.095, Stats. (1987), to apply in differing contexts and so, to coexist.

In construing statutes that are seemingly in conflict, it is our duty to attempt to harmonize them, if it is possible, in a way which will give each full force and effect. *Kaiser v. City of Mauston,* 99 Wis. 2d 345, 362, 299 N.W.2d 259 (Ct. App. 1980). The legislative intent underlying ch. 800 suspensions is clearly stated in the *Legislative Reference Bureau Analysis,* attached to the bill when it was considered by lawmakers. This court has held that such an analysis is significant in determining legislative intent. *Sheely v. DHSS,* 150 Wis. 2d 320, 336, 442 N.W.2d 1 (1989). The purpose of creating secs. 800.09 and 800.095, Stats., is explained, in part, as follows:

> Judgment and nonpayment
> Under present law, in the general procedure in municipal court, if a defendant fails to pay a judgment he or she is committed to the county jail or the house of correction for not more than 90 days, unless the failure is because of the defendant's indigency. This bill adds new procedures and options in those actions.
> The bill requires the court to give the defendant in such an action both an oral and a written warning about the consequences of failing to pay a judgment, including the possibility of imprisonment or suspension of the defendant's motor vehicle operating privilege . . . Also, the court may suspend the defendant's operating privilege until the judgment

184

and any restitution is paid, if the defendant has not paid within 60 days after the date payments were ordered and has not notified the court of inability to pay, . . . except that the suspension period may not exceed 5 years.

. . .

Under the bill, the municipality is specifically authorized to use ordinary civil remedies (such as garnishment and execution) to collect its judgment.

*See Legislative Reference Bureau Analysis of 1987 Senate Bill 379.*

■.

In addition to the clear expression of legislative intent found in the bill's analysis—an intent which belies the court of appeals conclusion that lawmakers inadvertently omitted secs. 800.09 and 800.095, Stats. from sec. 343.30(5), Stats.,—we consider the nature of these statutes. Section 343.30(5) which permits drivers license suspensions for the violation of any state or local traffic laws, is a general statute when compared to the more specific secs. 800.09 and 800.095, which set forth municipal procedure and provide municipal courts with the means to secure compliance with orders they issue. This court has held, and we so hold here that, "[w]hen we compare a general statute and a specific statute, the specific statute takes precedence." *City of Muskego v. Godec,* 167 Wis. 2d 536, 546, 482 N.W.2d 79 (1992).

■

Petitioners argue that a statute authorizing drivers' license suspensions for traffic infractions—a situation factually distinguishable from the instant case—should take precedence over statutes authorizing municipal courts to suspend drivers' licenses for failure to pay fines lawfully imposed. We reject peti-

185

tioners' argument because we conclude that ch. 800 suspensions are specific statutes intended to apply to precisely the situation at bar—when an individual has been found guilty of violating a municipal ordinance, fined, and warned that failure to pay the fine within 60 days after payment is ordered could result in the suspension of his or her operating privilege until the fine is paid, except that the suspension may not exceed five years. *See* sec. 800.09(1)(c), Stats.

It must also be noted that the authority to suspend drivers' licenses for failure to pay a fine is not, as petitioners state in their brief, limited to municipal courts.[10] Section 66.12(1)(c), Stats., directs the circuit court to use ch. 800 municipal procedure suspensions when defendants are found guilty in a forfeiture action based on a violation of a municipal ordinance. As recently as 1993, the legislature amended sec. 66.12(1)(c), Stats., to expand the scope of the circuit court's authority to suspend drivers' licenses. The law in its present form directs the circuit court to order suspensions for the nonpayment of a fine imposed for the violation of an "ordinance."[11] We think it is unrea-

[10] Petitioners mistakenly assert in their brief that the effect of the court of appeals decision, permitting municipal courts to suspend drivers' licenses for failure to pay non-traffic related municipal ordinance violations, is to accord municipal courts powers greater than those conferred on the circuit courts of this state. Circuit courts are, as noted above, directed to use ch. 800 municipal ordinance procedures for suspensions pursuant to sec. 66.12(1)(c), Stats.

[11] An earlier version of sec. 66.12(1)(c), Stats., in effect at the time of petitioners convictions, provided as follows:

> If the circuit court finds a defendant guilty in a forfeiture action based on a violation of a *municipal ordinance,* the court shall render judgment as provided under ss. *800.09* and *800.095.* (Emphasis added.)

186

sonable to assume that the legislature acted in 1993 to specifically expand the scope of the circuit court's authority to use ch. 800 municipal court procedures to suspend drivers' licenses if such suspensions are, as petitioners contend, prohibited by sec. 343.30(5), Stats.

## Remedial Statutes

Respondents characterize secs. 800.09 and 800.095, Stats., as remedial statutes because the municipal court is directed to suspend drivers' licenses only when an order to pay a fine—imposed for a non-traffic municipal ordinance violation—has been ignored. We agree with this characterization. Remedial statutes should be liberally construed to advance the remedy which the statute is intended to afford. *City of Madison v. Hyland, Hall & Co.,* 73 Wis. 2d 364, 373, 243 N.W.2d 422 (1976).

"The distinguishing characteristic of remedial contempt is that the sanction imposed for violation of the court order must be purgeable through compliance." *State ex rel. V.J.H. v. C.A.B.,* 163 Wis. 2d 833, 844–45, 472 N.W.2d 839 (1991). While we do not characterize petitioners' failure to pay as "contempt" in the usual context, the sanction imposed for failure to pay is a form of coercive action designed to compel petitioners to take affirmative and corrective action to remain in compliance with an existing court order. *Id.* at 845. The purge condition under ch. 800 simply requires payment of the fine that was initially imposed for the municipal ordinance violation.

Section 66.12(1)(c) was amended in 1993 by Act 167 to delete the term "municipal."

The purge condition must be feasible and reasonably related to the cause or nature of the contempt. *Id. (citing State ex rel. Larsen,* 159 Wis. 2d 672, 676, 465 N.W.2d 225 (Ct. App. 1990)). In the instant case, petitioners never sought relief from judgment because of any alleged inability to pay the fines imposed; equally important, the purge condition under ch. 800, merely requires petitioners to pay fines imposed for conduct which was found to have violated a municipal ordinance. For these reasons we conclude that ch. 800 suspensions are properly characterized as remedial statutes, intended to assist the court in enforcement of its orders. Further, we find the purge condition, feasible in this case, reasonably related to the reason for the imposition of the sanction of suspension.

## Constitutionality of the Statutes

Statutes are presumed to be constitutional. *State v. Borrell,* 167 Wis. 2d 749, 762, 482 N.W.2d 883 (1992). Every presumption must be indulged to sustain the constitutionality of a statute, and if doubt exists, it must be resolved in favor of constitutionality. *Zintek v. Perchik,* 163 Wis. 2d 439, 478, 471 N.W.2d 522 (Ct. App. 1991). The party challenging the constitutionality of a statute, bears the burden to establish unconstitutionality. *Id.* at 478–79.

Petitioners raise two constitutional objections to secs. 800.09 and 800.095, Stats. They contend that: (1) ch. 800 suspensions constitute an unlawful exercise of police power and, therefore, violate due process; and (2) ch. 800 suspensions are "excessive fines" in violation of the Eighth Amendment to the United States Constitution and Article I, sec. 6 of the Wisconsin Constitution.

188

The test to determine whether secs. 800.09 and 800.095, Stats., constitute an unlawful use of police power and violate due process, is whether these statutes are rationally related to a legitimate state interest. *State v. McManus,* 152 Wis. 2d 113, 130, 447 N.W.2d 654 (1989). Driver license suspensions imposed under ch. 800 are a form of coercive action designed to compel the contemnor to take affirmative and corrective action to remain in compliance with an existing court order. This particular grant of authority was first extended to municipal courts by 1987 Wis. Act 389. Under prior law, the only sanction available for non-payment of a fine, was to order the individual to jail. The legislative purpose in amending the law, as stated in the *Legislative Reference Bureau Analysis* attached to the bill, was to "add new procedures and options" if a defendant fails to pay a judgment.

■

We conclude that the purpose of providing municipal courts with additional procedures and options, and particularly the option of suspending a driver's license, is rationally related to (1) the legitimate interest the state has in securing compliance with orders issued by its courts; and (2) the grant of authority is a valid exercise of the state's power to regulate for the health, welfare and safety of its citizens.

■

Further, ch. 800 suspensions ensure procedural due process because the sanction is not imposed unless all of the following occur: (1) the defendant is notified that failure to pay the fine within 60 days after payment is ordered may result in suspension; (2) the suspension is rescinded and the operating privilege reinstated once the fine is paid; (3) the suspension will not be enforced against any individual who is able to

demonstrate an inability, for good cause or indigence, to pay the fine; and (4) the suspension is limited in duration not to exceed 5 years. Section 800.09(1)(c), Stats.

Petitioners also argue that the practice of suspending drivers' licenses for failure to pay a fine violates the "excessive fines" clause of the state and federal constitutions. The gist of this argument is that a 5 year license suspension is unduly harsh when compared to the maximum penalties for persons convicted, as they were, of Class B misdemeanors. The maximum penalties petitioners refer to are a $1,000 fine or 90 days confinement or both. Petitioners fail to explain, why a suspension that will be rescinded upon payment of an outstanding fine is excessive when compared with a larger fine or with a loss of liberty for 3 months, or both. Petitioners also attempt to demonstrate the lack of proportionality by pointing out that the other offenses for which five year suspensions are authorized are homicide and hit and run. We think this argument misses the point. Unlike ch. 800 suspensions, which are purgeable, and therefore remain in effect only until such time as the fine is paid, suspensions under sec. 343.31(3)(c), (d)4 and (j) are not purgeable; once imposed, they last for the full 5 years. The distinguishing feature of ch. 800 suspensions is that it is only enforced for the full term if the individual who is subject to the fine continues to refuse to pay the amount due. Accordingly, we find no merit to petitioners' argument that ch. 800 suspensions are excessive.

For the reasons set forth above, we hold that, pursuant to the specifically applicable statutes, secs. 800.09 and 800.095, Stats., municipal courts have the

statutory authority to suspend drivers' licenses for failure to pay non-traffic related fines imposed for municipal ordinance violations. Further, we hold that this grant of authority is constitutional.

*By the Court.*—The decision of the court of appeals is affirmed.