CITY OF MILWAUKEE, Plaintiff-Appellant,

STATE of Wisconsin, Intervenor,

v.

Brahim ARRIEH, Defendant-Respondent.†

Court of Appeals

*No. 96–0482. Submitted on briefs April 8, 1997.—Decided May 20, 1997.*

(Also reported in 565 N.W.2d 291.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Grant F. Langley*, city attorney, with *John J. Carter*, special counsel, of Greenfield.

On behalf of the intervenor, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Donald V. Latorraca*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jerome F. Buting* of *Buting & Williams, S.C.*, of Brookfield.

Before Wedemeyer, P.J., Fine and Curley, JJ.

FINE, J. The City of Milwaukee appeals from an order entered by the trial court rescinding a previously entered order for closure and sale under the Drug

House Abatement Law, §§ 823.113 *et seq.*, STATS., of an apartment building owned by Brahim Arrieh. The trial court concluded that the closure and sale violated Arrieh's Eighth-Amendment right to be free from "excessive fines." The question presented by this appeal is whether the Excessive Fines Clause prevents the confiscation or destruction of property to abate or remediate a nuisance. We conclude that it does not. We reverse.

## I.

Wisconsin's Drug Abatement Law declares to be a nuisance "[a]ny building or structure that is used to facilitate the delivery, distribution or manufacture . . . of a controlled substance . . . and any building or structure where those acts take place." Section 823.113(1), STATS. The law permits a city where the nuisance is located to "maintain an action in the circuit court to abate the nuisance and to perpetually enjoin every person guilty of creating or maintaining the nuisance, the owner, lessee or tenant of the building or structure where the nuisance exists and the owner of the land upon which the building or structure is located, from continuing, maintaining or permitting the nuisance." Section 823.113(2), STATS. If the circuit court finds that "the existence of the nuisance is established . . ., an order of abatement shall be entered as part of the judgment in the case." Section 823.114(1), STATS. Under this provision, the order of abatement "shall do all of the following:"

> (a) Direct the removal from the building or structure of all furniture, equipment and other personal property used in the nuisance.
> (b) Order the sale of the personal property.

(c) Order the closure of the building or structure for any purpose.

(d) Order the closure of the building or structure until all building code violations are corrected and a new certificate of occupancy is issued if required by the city, town or village within which the property is located and the building or structure is released under s. 823.15 or sold under s. 823.115.

(e) Order the sale of the building or structure and the land upon which it is located or, if the requirements under s. 66.05 (1m) (b) [66.05 (1) (b)] are met, order that the building or structure be razed, the land sold and the expense of the razing collected under s. 823.06.

*Ibid.* "The owner of any building or structure, or the owner of the land upon which the building or structure is located" that is subject to an abatement order under the Drug House Abatement Law is not without a remedy to save his or her investment and may "file an undertaking in a sum and with the sureties required by the court to the effect that he or she will immediately abate the alleged nuisance, if it exists, and prevent the same from being reestablished in the building or structure, and will pay all costs that may be awarded against him or her in the action." Section 823.15, STATS. This section further provides:

Upon receipt of the undertaking, the court may dismiss the action as to the building or structure and revoke any order previously made closing the building or structure; but that dismissal and revocation shall not release the property from any judgment, lien, penalty, or liability that the property is subject to by law. The court has discretion in accepting any undertaking, the sum, supervision, satisfaction, and all other conditions of

767

the undertaking, but the period that the undertaking shall run may not be less than one year.

*Ibid.*

On November 27, 1990, the City of Milwaukee commenced an abatement action against Arrieh alleging that he owned an apartment building in which there was drug activity and that, although two formal notices to abate that activity were served on him, the building "has continued to be used to facilitate the delivery of a controlled substance," and that, therefore, the building was "a public nuisance pursuant to sec. 823.113, Stats."[1]

The trial court held a hearing on the City's complaint. Arrieh and a narcotics detective with the Milwaukee Police Department testified. At the

---

[1] The first notice was dated July 13, 1990, and gave to Arrieh "5 working days to abate the nuisance." The notice further explained: "This means that you must take all means necessary to assure that the sale and or manufacture of illegal drugs at the above address ceases completely." The notice further explained the consequences of a failure to abate:

> Unless you abate the nuisance immediately, the property at the above location may be declared a public nuisance by a court of competent jurisdiction.

> If the court declares the above property a nuisance it may be ordered under state statutes S 823.113, that all personal property be removed and sold, also order the closure of the building for any purpose.

> Further, all person(s) residing on the premises may be required to vacate the property, and the property could be ordered razed and/or sold. This includes all the land upon which the structure is located.

The second notice was dated July 23, 1990, and alleged that there were "[f]urther citizen/police drug complaints" and "[o]n-going drug activity as detected by the Drug Abatement Team and/or building code violations."

conclusion of the hearing, the trial court found "that the building is one used to facilitate the delivery of controlled substances" and that, accordingly, the building was a nuisance under the Drug House Abatement Law. The trial court did not enter an immediate order of closure, but, rather, adjourned the hearing to take additional testimony concerning the factors enumerated in § 823.113(4), STATS.[2] Following this second hearing, at which Arrieh, the police detective who testified at the first hearing, and a City of Milwaukee building inspector testified, the trial court found that there was substantial drug activity at the apartment building and that, therefore, the building was a nuisance subject to abatement. The trial court ordered the building closed to all except Arrieh "and his agents and workmen who are on the premises performing work as ordered by the building inspector." The trial court also directed Arrieh "to serve tenancy termination notices" on the building's tenants. The trial court did not, however, order the property sold,

---

[2] Section 823.113(4), STATS., provides:

In ruling upon a request for closure, whether for a defined or undefined duration, the court shall consider all of the following factors:

(a) The extent and duration of the nuisance at the time of the request.

(b) Prior efforts by the defendant to comply with previous court orders to abate the nuisance.

(c) The nature and extent of any effect that the nuisance has upon other persons, such as residents or businesses.

(d) The effect of granting the request upon any resident or occupant of the premises who is not named in the action, including the availability of alternative housing or relocation assistance, the pendency of any action to evict a resident or occupant and any evidence of participation by a resident or occupant in the nuisance activity.

but, rather, gave Arrieh an opportunity to post an undertaking under § 823.15, STATS. Arrieh offered an undertaking of $2,000, which the trial court rejected. After finding that Arrieh knew that his building was being used for the sale of drugs and did not make good-faith efforts to rectify the situation, the trial court ordered that the building be sold.[3]

Arrieh challenged the constitutionality of the Drug House Abatement Law, which the trial court rejected. In an unpublished opinion, *City of Milwaukee v. Brahim Arrieh*, No. 91–2628, unpublished op. (Wis. Ct. App. Sept. 27, 1994), we affirmed in part and reversed in part. The panel agreed unanimously that Arrieh's challenges to the Drug House Abatement Law on vagueness and due-process grounds were without merit, and remanded the case to the trial court to consider whether closure and sale of the apartment building violated the Eighth Amendment's prohibition against excessive fines. *Ibid.*[4] The trial court, a new judge presiding, concluded that closure and sale of the apartment building violated Arrieh's Eighth-Amendment rights.[5]

---

[3] The trial court described Arrieh's efforts to abate the drug problem as being "made only grudgingly and only with the threat of closure hanging" over his head, and characterized those efforts as "too little too late."

[4] One member of the panel joined in a concurring opinion written by the author of this opinion. The author of this opinion and the other judge did not join in the lead opinion. Thus, as we noted in that concurrence, relying on *State v. Dowe*, 120 Wis. 2d 192, 194, 352 N.W.2d 660, 662 (1984), the concurring opinion was the opinion for the court. *See City of Milwaukee v. Brahim Arrieh*, No. 91–2628, unpublished concurrence at 8 (Wis. Ct. App. Sept. 27, 1994) (Fine, J., concurring).

[5] In its lengthy written decision, the trial court relied extensively on the minority opinion in our earlier decision in

## II.

The Eighth Amendment prohibits the imposition by government of "excessive fines." *See Browning-Ferris Indus., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 264 (1989).[6] Although the United States Supreme Court has never held that the Excessive Fines Clause applies to the States through the Fourteenth Amendment, *see id.*, 492 U.S. at 276 n.22 (declining to decide issue); *Pueblo School Dist. No. 70 v. Toth*, 924 P.2d 1094, 1099 (Colo. App. 1996) ("The excessive fines clause of the Eighth Amendment has not been held specifically applicable to the states by virtue of the Fourteenth Amendment's due process clause."), we assume that it does.[7] *See City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 190, 532 N.W.2d 690, 698 (1995) (assuming, without discussion, that the Eighth Amendment's prohibition against "excessive fines" applies to state-court proceedings). Moreover, imposition of "excessive fines" is prohibited by Article I, § 6 of the Wisconsin Constitution.[8]

---

*City of Milwaukee v. Brahim Arrieh*, mischaracterizing it as the opinion of the "Court of Appeals." See footnote 4, above.

[6] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[7] The "cruel and unusual" component of the Eighth Amendment applies to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666–667 (1962). Additionally, the Supreme Court assumed, without deciding, that the "excessive bail" provision also applies to the states. *See Schilb v. Kuebel*, 404 U.S. 357, 365 (1971) (*dictum*).

[8] Arrieh does not rely on or even cite Article I, § 6 of the Wisconsin Constitution. This provision reads:

"Statutes are presumed to be constitutional. Every presumption must be indulged to sustain the constitutionality of a statute, and if doubt exists, it must be resolved in favor of constitutionality." *Kilgore*, 193 Wis. 2d at 188, 532 N.W.2d at 697. (Internal citations omitted.) The Excessive Fines Clause of the Eighth Amendment applies only to "punishment" that is imposed by government " 'for some offense.' " *Austin v. United States*, 509 U.S. 602, 609–610 (1993) (citation omitted); *see also Alexander v. United States*, 509 U.S. 544, 557 (1993). Accordingly, the Eighth Amendment is not implicated by a forfeiture unless that forfeiture is "punishment" for an "offense." *Austin*, 509 U.S. at 622.[9]

Although the abatement of any nuisance adversely affects the owner of the property found to be subject to abatement, that fact has never been considered to be "punishment" and has never triggered an "excessive fines" analysis. *See Bennis v. Michigan*, 516 U.S. —, —,

---

Excessive bail shall not be required, nor excessive fines be imposed, nor cruel and unusual punishments inflicted.

Given the mirror-image wording of the Eighth Amendment and Article I, § 6, and in the absence of any reason to interpret the two clauses differently, we assume that the result of this case would be the same if it were decided under the Wisconsin Constitution. *See City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 190, 532 N.W.2d 690, 698 (1995) (assuming, without discussion, that the two clauses are congruent); *Pueblo School Dist. No. 70 v. Toth*, 924 P.2d 1094, 1099 (Colo. App. 1996) (construing the "excessive fines" clause of the Colorado Constitution consistent with authority construing the Excessive Fines Clause of the Eighth Amendment).

[9] Significantly, the statutes in *Austin* made the owner's innocence a defense to the forfeiture. *Austin v. United States*, 509 U.S. 602, 605 n.1 (1993).

116 S. Ct. 994, 1001, 134 L.Ed.2d 68, 78–79 (1996) (abatement of nuisance does not violate either Due Process Clause of Fourteenth Amendment or the Takings Clause of Fifth Amendment made applicable to the states by the Fourteenth Amendment even though abatement adversely affects innocent owner); *J. W. Goldsmith, Jr.-Grant Co. v. United States*, 254 U.S. 505, 513 (1921) (Excessive Fines Clause of the Eighth Amendment not discussed when innocent person's interest in property was forfeited even though the forfeiture was imposed by the United States) (forfeiture of innocent person's interest in property held not to violate due process: "It is the illegal use that is the material consideration,—it is that which works the forfeiture, the guilt or innocence of its owner being accidental."). Thus, *Miller v. Schoene*, 276 U.S. 272 (1928), upheld the forced destruction of cedar trees to protect nearby apple orchards, without compensation for either the damage or the diminished value. *Id.* at 281. Writing for a unanimous court, then Justice Harlan Fiske Stone expressed the canon:

> And where the public interest is involved preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property.

*Id.*, 276 U.S. at 279–280. *See also Lucas v. So. Carolina Coastal Council*, 505 U.S. 1003, 1022 (1992) ("[M]any of our prior opinions have suggested that 'harmful or noxious uses' of property may be proscribed by government regulation without the requirement of compensation."); *Just v. Marinette County*, 56 Wis. 2d 7, 16, 201 N.W.2d 761, 767 (1972) (recognizing

distinction between the taking of property for the public good, for which compensation is required, and the taking of property to prevent a public harm, for which compensation is not required); *Boden v. City of Milwaukee*, 8 Wis. 2d 318, 328–329, 99 N.W.2d 156, 162 (1959) (police power extends to "abatement or condemnation" of property without compensation if necessary to prevent harm to public); *Miller v. Foster*, 244 Wis. 99, 103, 11 N.W.2d 674, 676 (1943) ("property may be destroyed to protect the public welfare when such property becomes a nuisance or dangerous to public safety"); *Building Height Cases*, 181 Wis. 519, 523, 195 N.W. 544, 546 (1923) (recognizing that police power "has been exercised to authorize the destruction of buildings without compensation to prevent the spread of conflagration"); *see, e.g.,* § 66.05, Stats. (permitting razing without compensation buildings that have deteriorated to point of becoming public nuisances). We, like the Court in *Bennis*, 516 U.S. at —, 116 S. Ct. at 1001, 134 L.Ed.2d at 79, decline to veer from principles so firmly rooted in our jurisprudence.[10]

---

[10] The trial court and the minority in our earlier decision relied on land-use and takings cases to support their contention that the Excessive Fines Clause of the Eighth Amendment applies to the forced abatement of nuisances. *See City of Milwaukee v. Brahim Arrieh*, No. 91–2628, unpublished op. at 44–51 (Wis. Ct. App. Sept. 27, 1994) (Schudson, J). Those cases are inapplicable. For example, the second prong of the land-use analysis in determining whether there is a "taking"—namely, whether the regulation denies the owner an "economically viable use of his land," *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834 (1987); *see also Dolan v. City of Tigard*, 512 U.S. 374, —, 114 S. Ct. 2309, 2316, 129 L.Ed.2d 304, 316 (1994); *Lucas v. So. Carolina Coastal Council*, 505 U.S. 1003, 1016 n.6 (1992)—is inapplicable to nuisance abatement cases, where the deprivation is obvious; *Just v. Marinette County*, 56 Wis. 2d 7,

 A property owner's innocence is not a defense under the Drug House Abatement Law; the owner of property found to be a nuisance under the Drug House Abatement Law must abate the nuisance irrespective of whether he or she has committed an "offense." There is thus no "punishment" to trigger the Excessive Fines Clause of the Eighth Amendment, *cf. J. W. Goldsmith, Jr.-Grant Co.*, 254 U.S. at 513 ("It is the illegal use that is the material consideration,—it is that which works the forfeiture, the guilt or innocence of its owner being accidental.") (due-process analysis), even though the closure and sale may deter other property owners from letting their buildings become nuisances, *see Bennis*, 516 U.S. at —, 116 S. Ct. at 1000, 134 L.Ed.2d at 78 (recognizing that deterrence element does not make forfeiture "punishment"). Either the owner abates the

---

16, 201 N.W.2d 761, 767 (1972) (recognizing distinction between the taking of property for the public good, for which compensation is required, and the taking of property to prevent a public harm, for which compensation is not required). *See also Lucas*, 505 U.S. at 1022 (recognizing the distinction between land-use regulation and nuisance abatement: "many of our prior opinions have suggested that 'harmful or noxious uses' of property may be proscribed by government regulation without the requirement of compensation"). By the same token, the appropriate test of whether a nuisance-abatement scheme passes constitutional muster is not the substantially-advance-legitimate-state-interest burden applicable to land-use regulations, *see Dolan*, 512 U.S. at —, 114 S. Ct. at 2316, 129 L.Ed.2d at 316; *Nollan*, 483 U.S. at 834, but, rather, whether the legislature's choice, where "unavoidable," is not "unreasonable." *Miller v. Schoene*, 276 U.S. 272, 280 (1928). Given the forays of destruction that flow from drug-house beachheads, we do not believe that the Drug House Abatement Law is an "unreasonable" legislative response.

nuisance or the property is sold to someone who will. *See* § 823.114(1), STATS. Abatement of the nuisance by the property's owner prevents the property from being closed and sold, § 823.15, STATS. (owner may file an undertaking "to the effect that he or she will immediately abate the alleged nuisance"), and the circuit court may consider an owner's good-faith efforts to abate the nuisance in determining whether closure is warranted, § 823.113(4), STATS. The Eighth Amendment is not applicable here. The order of the trial court rescinding the order entered for the closure and sale of Arrieh's apartment building is reversed.

*By the Court.*—Order reversed.