STATE of Wisconsin, Plaintiff-Respondent,

v.

Van G. NORWOOD, Defendant-Appellant.†

Court of Appeals

*No. 2004AP1073–CR. Oral argument August 8, 2005.
—Decided September 21, 2005.*

2005 WI App 218

(Also reported in 706 N.W.2d 683.)

† Petition to review denied 1-20-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of and oral argument by *Terry Evan Williams* of *Williams Law Office* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *David J. Becker*, assistant attorney general. There was oral argument by *David J. Becker*.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. Van G. Norwood appeals from a judgment of conviction for sexual assault of a child and an order denying his motion for postconviction relief. He makes three claims: (1) that he was entitled to a substitution of judge because his substitution request came prior to any preliminary contested matter; (2) that his letter to the court offering to plead guilty, which contained inculpatory statements, should not have been admitted because our state statutes prohibit such evidence from coming in; and (3) that it was improper for the State to put on "other acts" evidence in its case-in-chief before the victim testified. We affirm. The "preliminary contested matter" test for whether a defendant made a timely substitution request applies only in civil cases; in criminal cases, we ask whether proceedings have begun. Thus, the first issue fails. While none of Norwood's offer to plead guilty should have come in, in this case the error was harmless. Finally, we know of no law that precludes the State from presenting "other acts" evidence first.

¶ 2. On April 18, 1999, David W. asked Norwood to babysit his two children while he went out with another friend. While he was out, his eight-year-old daughter Angelia occupied herself by coloring pictures on the couch. At some point, Norwood, who was sitting next to her, asked her for a kiss, and she obliged him with a kiss on the cheek. Norwood began licking her face, attempted to put his tongue in her mouth, and reached in her pants to touch her genitals. Afterward, he unsuccessfully attempted to bribe her with fifteen dollars in order to ˙prevent her from reporting the incident to her father. When David returned home, Angelia ran to him in tears and informed him that Norwood "did something bad." David led his daughter into the bathroom, where she explained what Norwood had done. He attempted to beat Norwood up and later, when Norwood had left, called the police. Two days later, the State filed charges against Norwood for first-degree sexual assault of a child by a persistent repeat offender.

¶ 3. At the adjourned jury trial on November 1, the court noted that the judge originally assigned to the case had become ill and asked whether the defendant had any objections to the judge currently presiding over the proceeding. Defense counsel stated that Norwood had no objection. The parties discussed several matters. The State indicated that it had an "other acts" motion pending and also expressed an interest in introducing the contents of a letter that Norwood had written to the court as an admission against interest by a party opponent. Defense counsel changed the subject, indicating that her client wished to withdraw a previously entered NGI plea and to proceed upon a plea of not guilty. Following a colloquy, the court allowed Norwood to change his plea. Subsequently, the court again asked

Norwood whether he objected to the sitting judge. This time the court personally addressed Norwood, who indicated that he would prefer to have the case sent back to the original judge. The State pointed out that the court had already taken action in the proceedings, and the court ultimately concluded that it could not allow a substitution in light of that circumstance.

¶ 4. The court heard the parties' arguments concerning Norwood's letter to the court the following day after jury selection. Specifically, the State wished to offer the following portion of the letter: "I don't want the people involved in my case to have to go to trial either. I know they are good people and should not have to suffer for what I've caused to happen, which should not have come into their lives." Defense counsel objected that offers to settle are not admissible and that, as a whole, the letter constituted an offer to settle. According to defense counsel, "[I]t's impossible to read this letter without seeing this letter as an offer of settlement. [Norwood] says I'm willing to plead out to a Class B felony." The court declined to rule on the issue until trial.

¶ 5. At the same proceeding, the court heard the State's "other acts" motion. The State wanted to introduce Norwood's prior conviction for sexual assault of a victim named Trina O. Norwood objected to admitting the evidence, particularly in the State's case-in-chief, but the court granted the motion.

¶ 6. On November 3, the jury trial began. The State called Trina as its first witness. Her testimony was as follows: In 1987, when Trina was eleven years old, she went across the street to play with two neighbor boys who lived in Norwood's home. Norwood summoned Trina over to the couch to watch television with him. A few minutes later, he removed her pants and

touched her vaginal area. He also unzipped his own pants and attempted to have intercourse. Trina told him twice to get off of her before he left her alone.

¶ 7. The State next presented the testimony of David's friend, who had returned to the house with David and observed Angelia crying and running to her father. The friend testified that he also saw Norwood buttoning his pants and grabbing his belt, at which point Norwood said, "I'm sorry." David's testimony followed, after which the State presented the testimony of a police detective who testified that Norwood never returned to work after the incident. She also testified that Norwood could not be found at his apartment, which was in disarray and looked as though someone had hurriedly packed some belongings and left. According to the detective, a check of Norwood's bank records revealed that Norwood had stopped at an ATM machine and withdrawn all but three dollars from his account. The State presented Angelia's testimony last and then rested.

¶ 8. Norwood testified on his own behalf. Just prior to cross-examination, the State renewed its request to admit the above-quoted portion of Norwood's letter to the court. The trial court granted the motion, and the prosecutor read the statements. Also during cross-examination, Norwood corroborated the police detective's account of his flight, admitting that after the incident, he rushed home, packed up everything he owned, withdrew all but three dollars from his bank account, and took off for California. He further admitted that he had put his hand in Angelia's pants and touched her vaginal area but insisted that this was purely accidental and not done for his own gratification.

¶ 9. After Norwood had rested and the jury retired to deliberate, the jurors asked to see the letter to

the court. The court allowed them to see the admitted portions. Some time later, the jury came back with a verdict of guilty. The court sentenced Norwood to life imprisonment without the possibility of parole or extended supervision. Norwood moved for postconviction relief, which the court denied. Norwood now appeals.

## Substitution of Judge

¶ 10. Norwood first asserts that although the court ultimately denied his request to send the case back to the originally assigned judge, it did so only after initially granting the request. Thus, he argues, the court lost authority to continue with the case, and its subsequent ruling rescinding its grant of substitution was a nullity. Norwood relies on the following exchange, which occurred after he indicated he wished the case to go back to the originally assigned judge:

> [STATE]: See, Your Honor, the fact is that the defendant does not have the right to file a substitution at this point and I don't think he should decide whether this case is going to stay with you or go to Judge Wilk.
>
> THE COURT: He can, though, because—
>
> STATE: No.
>
> THE COURT: —it's not assigned to me, and when we substitute a different judge they have a renewed right of substitution.
>
> STATE: They do until the Court takes action, and you just took action, judge. You just took an action in this matter. You had him withdraw his [NGI plea] . . . .

Norwood views "[h]e can, though" as a grant of substitution. We disagree. The court was clearly addressing

687

the prosecutor, explaining to him why the court did not concur in the prosecutor's assertion that it was too late for Norwood to substitute. It was not in itself a decision on the part of the court.

¶ 11. Alternatively, Norwood argues that if the court did fail to grant his substitution request, it did so improperly because he had not waived his right to substitute pursuant to Wis. Stat. § 971.20(5) (2003–04).[1] Citing *Pure Milk Products Cooperative v. National Farmers Organization*, 64 Wis. 2d 241, 219 N.W.2d 564 (1974), Norwood maintains that his request to send the case back to the original judge was timely because "the court did not rule in any contested matter." *See id.* at 248–50 (right to substitution of judge waived if no request made before hearing of preliminary contested matters).

¶ 12. We hold that *Pure Milk*'s "preliminary contested matter" rule does not apply to substitutions of judge pursuant to Wis. Stat. § 971.20(5). Section 971.20(5) reads in relevant part:

> **(5)** Substitution of trial judge subsequently assigned. If a new judge is assigned to the trial of an action and the defendant has not exercised the right to substitute an assigned judge, a written request for the substitution of a new judge may be filed with the clerk within 15 days of the clerk's giving actual notice or sending notice of the assignment to the defendant or the defendant's attorney . . . . If the notification occurs within 48 hours of the trial or if there has been no notification, the defendant may make an oral or written request for substitution prior to the commencement of the proceedings.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

The standard in this statute is whether "proceedings" have commenced. *Pure Milk* interpreted a different statute, applicable to *civil* actions or proceedings. *See Pure Milk*, 64 Wis. 2d at 246; Judicial Council Note, 1977, WIS. STAT. § 801.58 (*Pure Milk* "preliminary contested matters" rule codified in § 801.58). In *State ex rel. Mace v. Circuit Court for Green Lake County*, 193 Wis. 2d 208, 221–22, 532 N.W.2d 720 (1995), the court specifically declined to engraft the "preliminary contested matters" rule of § 801.58 onto § 971.20. Although *Mace* construed § 971.20(4), "Substitution of trial judge originally assigned," while this action implicates § 971.20(5), "Substitution of trial judge subsequently assigned," we generally attempt to harmonize provisions in the same statute by reading them together. *See R.W.S. v. State*, 162 Wis. 2d 862, 871, 471 N.W.2d 16 (1991) (courts to read multiple statutes in same chapter *in pari materia*). Because Norwood's plea withdrawal constitutes a "proceeding" within the meaning of § 971.20(5), his argument fails.

### Letter to the Court

¶ 13. Norwood also contends that the court erred when it admitted portions of his letter into evidence. In the letter, Norwood expressed his desire to not go through with the trial. He stated that he wished to be placed in a facility in the care of "mental doctors" who could help him sort out what was wrong with him and help him understand his behavior. He requested the court to sentence him for a Class B felony and to impose whatever punishment it deemed fair. Norwood also stated, "I don't want the people involved in my case to have to go to trial either. I know they are good people and should not have to suffer for what I've caused to

689

happen, which should not have come into their lives."
Again, the jury heard the quoted portion.

■

¶ 14. Before we address this issue, we deem it
important to detail how the issue came before us. Prior
to trial, defense counsel objected to the letter on the
ground that it constituted an offer to settle: "[I]t's
impossible to read this letter without seeing this letter
as an offer of settlement. [Norwood] says I'm willing to
plead out to a Class B felony." Defense counsel also
stated:

> But then the issue is do we sever the letter to the extent
> that the rest of it doesn't make sense? Are we taking
> something out of context that really belongs in context
> because this is a letter—this is very, very clearly a letter
> asking the judge to take a certain action, because Mr.
> Norwood . . . [believes] . . . that a judge can control, you
> know, what the settlement is in a case.

At trial, the State asserted that it did not wish to
introduce the part of the letter that the defense con-
strued as an offer to plead guilty but only the part
constituting an admission on Norwood's part. The court
admitted the statements pursuant to WIS. STAT.
§ 908.01(4)(b) (admission by a party opponent).

¶ 15. On appeal, Norwood for the first time cited
a specific statute, namely, WIS. STAT. § 904.08 ("Compro-
mise and offers to compromise"), in support of his
argument. The State replied that this statute did not
apply to criminal proceedings. It opined that another
statute, WIS. STAT. § 904.10, might be relevant but
asserted that Norwood had waived the right to invoke it
because he had not raised the issue. Section 904.10
reads:

**904.10 Offer to plead guilty; no contest; with-drawn plea of guilty.** Evidence of a plea of guilty, later withdrawn, or a plea of no contest, or of an offer to the court or prosecuting attorney to plead guilty or no contest to the crime charged or any other crime . . . is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for the person's conduct. Evidence of statements made in court or to the prosecuting attorney in connec-tion with any of the foregoing pleas or offers is not admissible.

Norwood did make an argument based on § 904.10 in his reply brief, and at oral argument, the State renewed its assertion that the issue was waived.

¶ 16. We acknowledge that the trial court never had before it any specific statute, so we are sympathetic to the State's contention. *See State v. Agnello*, 226 Wis. 2d 164, 172–73, 593 N.W.2d 427 (1999) (trial counsel must lodge an adequate objection in the trial court to preserve the issue for appeal so that both parties and the trial court have an opportunity to address disputed issues); *State v. Mechtel*, 176 Wis. 2d 87, 100, 499 N.W.2d 662 (1993) ("We do not generally address argu-ments raised for the first time in reply briefs."). None-theless, we have grave reservations about applying waiver to this case.

¶ 17. First, at the very least, trial counsel's objec-tion should have led the court to Wis. Stat. § 904.08, which in turn would have brought Wis. Stat. § 904.10 to the court's attention. Counsel used the phrase "offer to compromise" in framing her objection, and § 904.08 contains virtually identical language. *See State v. Corey J.G.*, 215 Wis. 2d 395, 407 & n.7, 572 N.W.2d 845 (1998) (stating that although an objection must be sufficiently specific to apprise the trial court of the grounds on

which it is based, it is not necessary for counsel to cite the precise statutory section at issue). Section 904.10 lies *on the facing page* to this statute directly in the reader's field of vision in the current version of our statutes. Moreover, § 904.10 is directly on point. It categorically mandates the exclusion of plea offers. *See State v. Mason*, 132 Wis. 2d 427, 432–33, 393 N.W.2d 102 (Ct. App. 1986) (holding that "is not admissible" language in § 904.10 intended a prohibition "for any purpose"). Under the circumstances, § 904.10 was simply too conspicuous not to notice.

¶ 18. Second, one could reasonably conclude that Norwood's trial counsel *did* adequately preserve an objection based on Wis. Stat. § 904.10. Although it may not have been technically correct to characterize Norwood's letter as an "offer of settlement," counsel appears to have used the term loosely to refer to the ultimate disposition of a case. One could reasonably construe the tenor of the objection to be that, read as a whole, Norwood's letter was an offer to plead out to a Class B felony and that one could not feasibly sever the portion the State wished to introduce. If this understanding of counsel's objection is correct, then § 904.10 is, again, right on point.

¶ 19. Third, if we apply waiver to this case, Norwood would probably have grounds to claim ineffective assistance of counsel. Counsel performs ineffectively when his or her performance is deficient and prejudices the client's defense. *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). If counsel correctly concluded that Norwood's statements were an integral part of an offer to dispose of the case via a plea, then Wis. Stat. § 904.10 is dispositive on the issue of the letter's admissibility. Effective counsel would have been well aware of this authority. With respect to prejudice, the

defendant must show that but for counsel's unprofessional errors, the result would have been different. *Pitsch*, 124 Wis. 2d at 642. In the portion of Norwood's letter presented to the jury, Norwood unequivocally incriminated himself and accepted responsibility for causing Angelia and her family's suffering, apologizing for "what *I've caused* to happen." (Emphasis added). This admission was explosive evidence of guilt, and ordinarily we would be hard-pressed to conclude that the jury would have reached the same verdict had it not heard this statement. For all these reasons, we reach the merits.

¶ 20. We agree with Norwood that Wis. Stat. § 904.10 prohibited the use of statements from his correspondence to the court. Norwood stated that he wanted to avoid trial. Nothing in the record indicates that the State was amenable to dismissing the case. That fact left Norwood with two choices: plead or go to trial. Obviously, the only way he could avoid trial was to enter a plea. An offer to plead guilty or no contest was therefore implicit in the admitted statements. Moreover, we must consider the excised portion in context. The part immediately preceding the part presented to the jury reads, "I don't want to continue with the coming proceeding. I request that you sentence me for a class B felony, in whatever degree you wish, probation, stayed sentence or whatever you think fair." Further, Norwood asked to be confined to a facility where he could get mental health treatment. We construe the letter as a whole as an offer to plead and conclude that any incriminating statements in the letter were integrally intertwined with this offer. We cannot feasibly separate a defendant's expressed will-

ingness to enter a plea agreement from his or her reasons for wanting to do so.[2]

¶ 21. We reject the trial court's rationale that Norwood's statements could come in as party admissions. WISCONSIN STAT. § 908.01(4)(b) deals with admissions by a party as a general rule. Admissions incidental to an offer to plead, however, are a special kind of party admission: they are impossible to segregate from the offer itself because the offer is implicit in the reasons advanced therefor. WISCONSIN STAT. § 904.10 trumps § 908.01(4)(b) because it excludes only this particular category of party admissions and therefore is more specialized than the latter statute. *See City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 185, 532 N.W.2d 690 (1995) (a specific statute takes precedence over a more general one).

¶ 22. The fact that a court improperly admitted evidence it should have kept out, however, does not by itself justify reversal. WIS. STAT. § 805.18(1) (error must affect substantial rights of party seeking reversal). Here, we are convinced that the court's error was harmless. In our view, the precise standard for harmless error is still in flux. *See State v. Hale*, 2005 WI 7, ¶¶ 60 & n.9, 277 Wis. 2d 593, 691 N.W.2d 637 (concluding majority's "harmless beyond a reasonable doubt" test is equivalent to formulation in prior cases); *id.*, ¶¶ 86–89 (Wilcox, J., concurring) (concluding otherwise); *id.*,

---

[2] Although the State does not argue on appeal that the offer to plead is severable, the prosecutor clearly framed the issue that way at trial when he stated that he did not intend to offer the statements that Norwood construed as an offer to plead guilty. We have addressed the issue because it was clearly before the trial court.

¶ 79. (Abrahamson, C.J., *concurring*) ("[T]he doctrine of harmless error is a work in progress."). Regardless of what standard we use, however, the result is the same. We again acknowledge that Norwood unequivocally incriminated himself and that his admissions were devastating evidence against him. We further recognize that the jury almost certainly considered these statements. Indeed, it specifically asked the court if it could have copies of the statements during deliberations. Nonetheless, this damning evidence merely duplicated other overwhelming evidence of guilt.

¶ 23. The jury heard evidence that Norwood was buttoning his pants and putting his belt back on when David and his friend entered the home, that Norwood *apologized* at the scene instead of disclaiming guilt, and that after the incident, he took off for California with his belongings and nearly all of his money. Most catastrophic of all for Norwood's defense, he admitted on the stand that he had put his hand in the child's pants and touched her vagina. We quote the following excerpt from cross-examination:

Q. So you didn't put your hand inside [Angelia's] pants?

A. That was an accident.

Q. Oh, so you did put your hand inside her pants, but you're saying it was an accident.

A. What you're trying to do is trying to confuse me. And I've already testified, okay, that I accidentally put my hand in her pants. And I didn't rub her vagina or pubic area or whatever for any . . . gratification whatsoever.

. . . .

Q. So you did touch her on the vagina.

A. And so—But when I say this, okay, this was an accident. I didn't mean that to occur. I wasn't trying to get any satisfaction from her, no gratification at all.

. . . .

Q. Where did you touch her?

A. I touched her vagina and I'm sorry.

Q. Now—And you're saying it was an accident that you put your hand down inside her pants and touched her on the vagina?

A. Yes.

We frankly do not see how any reasonable jury would have believed Norwood's story that he "accidentally" put his hand in a child's pants and touched her vagina. His on-the-stand, virtually Perry Mason-style confession, alone or combined with the other circumstantial evidence of guilt, would have sealed Norwood's fate even if the statements from the letter had never been introduced.[3]

### "Other Acts" Evidence

¶ 24. Norwood next complains that the testimony of Trina O. unfairly prejudiced him. He concedes that

---

[3] The parties devoted the majority of their briefs and oral arguments to the admissibility of portions of the letter pursuant to WIS. STAT. § 904.08. We need not address this issue, however, given that our analysis under WIS. STAT. § 904.10 is dispositive. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (we need not discuss alternative grounds where one suffices).

this "other acts" evidence was relevant and offered for a proper purpose but objects to the manner in which it was introduced on two grounds. First, he maintains that the timing of Trina's testimony was unfairly prejudicial because she was the State's first witness. Norwood asserts that this order of presentation inflamed the jury against him from the very beginning of the proceeding by painting him as "a bad man, a criminal, a child molester." Moreover, he posits that presenting Trina's testimony first may have confused the jury as to which female was the alleged victim.

¶ 25.　We disagree with both contentions. Norwood cites no authority for the proposition that otherwise admissible evidence is rendered unfairly prejudicial by the timing of its presentation, and we know of none. Further, the order of presentation did not obfuscate the identity of the victim. During opening statements, the State clearly identified and described an *eight-year-old* victim of a sexual assault that occurred several months earlier while Norwood was babysitting her. No reasonable jury would have mistaken Trina, an adult woman, for Angelia. Moreover, the State clearly apprised the jury that Trina was not present on the night in question.

¶ 26.　Aside from the timing of Trina's testimony, Norwood objects to the fact that she testified at all, asserting that the State could have presented the case without using live testimony and instead simply introduced the judgment of conviction or entered a stipulation that the prior sexual assault of Trina had occurred. We deem this argument waived because trial counsel never objected to the form in which the "other acts" evidence came in.

¶ 27. Norwood argues in the alternative that if trial counsel failed to properly object, she provided ineffective assistance of counsel. Even if we assume that counsel's performance was deficient, Norwood cannot demonstrate that counsel's failure to object prejudiced his defense. As with the letter, we conclude that Norwood's admission on the stand, combined with other evidence of his guilt, would have led the jury to convict Norwood even if Trina had never testified.

¶ 28. We affirm the judgment of conviction and the order denying postconviction relief. Norwood waived his opportunity to substitute the judge because he did not make his request until proceedings had started. Although the court should not have admitted any statements from Norwood's letter to the court—because they were an integral part of his offer to plead out—the error was harmless in light of other explosive evidence of guilt. Norwood also has no complaint about the form or order of presentation of the "other acts" evidence. He waived his objection as to form, and we find nothing prejudicial about the timing of Trina's testimony.

*By the Court.*—Judgment and order affirmed.