State of Wisconsin, Plaintiff-Respondent,
v.
Victor Groner, Defendant-Appellant.
No. 02-2515-CR.
Court of Appeals of Wisconsin.
Opinion Filed: February 26, 2004.
Before Deininger, P.J., Dykman and Lundsten, JJ.
¶1. PER CURIAM.
Victor Groner appeals a judgment convicting him of second-degree sexual assault by use or threat of force or violence, third-degree sexual assault, aggravated battery, false imprisonment and disorderly conduct. He also appeals an order denying postconviction relief. The issues are whether he received effective assistance from trial counsel, whether the trial court erroneously denied him a new trial on newly discovered evidence, and whether the court erred by denying his motion for postconviction discovery. We affirm.
¶2. At Groner's trial, the State presented evidence that Groner invited his neighbor, Julie S., to his apartment to watch television one evening. Sometime after she arrived at 9:00 p.m., Groner forcibly sexually assaulted her by inserting his fingers into her private parts and grabbing her breasts, then choking and detaining her when she tried to leave. Julie was only able to escape after punching Groner. Immediately after returning to her own apartment, she called 911, at 11:44 p.m. The State's case relied primarily on Julie's testimony, testimony from the police officers who responded to the scene, physical evidence of the assaults and the battery, and expert medical opinion concerning that physical evidence and its consistency with Julie's description of what happened.
¶3. In defense, Groner testified that there was no sexual contact or violence between him and Julie the night she visited his apartment. He also relied on inconsistencies between Julie's statement to police and her trial testimony, and the fact that she was heavily intoxicated on the night of the incident.[1] On direct examination, Groner admitted to three prior convictions.
¶4. The jury acquitted on the one sexual assault charge for which there was no physical evidence of injury. Following the verdict of guilty on the other charges, and Groner's conviction, he sought postconviction relief alleging numerous instances of ineffective assistance of trial counsel. He also requested a new trial on newly discovered evidence. That evidence consisted of information that: (1) a police record concerning Julie's 911 call identified Julie as the victim, Groner as the suspect, and a third person, Eric Sobek, as "other"; (2) Sobek's name on the record indicated that he may have been present or nearby when police responded to Julie's call; (3) someone in the police department requested a records check on Sobek three to four hours after the 911 call, and again several hours later; (4) Sobek lived near Groner and Julie and frequented their apartment building; (5) Sobek appeared to have a facial injury the day after the assault; and (6) Sobek knew someone named Julie.
¶5. Groner also moved for postconviction discovery of certain medical records pertaining to Julie's alcoholism. The trial court denied all of these motions, resulting in this appeal.
¶6. To prove ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that counsel's errors or omissions prejudiced the defense. State v. Pitsch, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). Deficient performance falls outside the range of professionally competent representation and this court measures it by the objective standard of what a reasonably prudent attorney would do in similar circumstances. See id. at 636-37. Prejudice results when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 642. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 637. Whether counsel's performance was deficient and whether it was prejudicial to the defendant are questions of law. Id. at 634.
¶7. Groner identifies seven acts or omissions of trial counsel that demonstrate ineffectiveness. We address each in turn.
¶8. Failure to pursue a "timeline" defense. At trial, Julie was vague about when the assaults occurred. In a prior statement to police, she estimated that the assaults occurred about forty-five minutes after her 9:00 p.m. arrival in the apartment. Julie's description of the assaults suggested that they lasted a relatively short time. Taken together, this suggests that the assaults terminated no later than 10:15 p.m. or so. However, Julie also testified that she made her 11:44 p.m. call to 911 immediately after escaping from Groner's apartment. Consequently, in Groner's view, counsel was ineffective when he failed to pursue this "timeline" discrepancy in order to attack Julie's credibility.
¶9. Counsel's omission was not prejudicial. Counsel showed that Julie was highly intoxicated, that she gave inconsistent versions of the events, and that she was vague about many details. It is not reasonably probable that more evidence of Julie's unreliability would have affected the verdict.
¶10. Failure to use available information from Julie's medical records. A sexual assault nursing specialist who examined Julie shortly after the assault testified that Julie had abrasions in her vagina consistent with fingernail scratches. On cross-examination, counsel elicited testimony that the injuries could have been self-inflicted as well, by scratching an itch. However, counsel had information that he did not use concerning Julie's recent yeast infection, a condition that might have caused genital itching. In Groner's view, the failure to provide evidence of this alternative source for Julie's vaginal injuries was prejudicial.
¶11. Counsel's omission was not prejudicial. Julie's yeast infection dated back one to two weeks before the assaults. The nurse examiner testified that vaginal injuries heal quickly, and that Julie's were "fairly fresh," suggesting that they postdated the infection. Additionally, evidence of the infection would have done nothing to explain Julie's many recent non-vaginal injuries. By offering a possible but unlikely alternative for only some of Julie's multiple injuries, counsel would not have created a reasonable probability of a different result.
¶12. Failure to impeach Julie with prior bad acts. In 1997, the State charged Julie in a criminal complaint after she made frivolous 911 calls and then lied about doing so. In 1999, the State charged her after she was arrested for shoplifting and gave police a false name. Counsel was aware of these charges, which ultimately resulted in ordinance violations, but did not use them at trial.
¶13. Again, Groner has not shown prejudice. Had counsel asked Julie about these instances, he would have been bound by her answer. See Wis. Stat. § 906.08(2) (2001-02).[2] Julie was not called as a witness during postconviction proceedings and, therefore, nothing in the record indicates what Julie would have said if asked about the prior acts. Even if she had remembered and admitted them, both involved lies made to evade possible criminal liability. Neither involved false accusations against a third person. It is not reasonably probable that this line of questioning would have persuaded the jury that Julie was lying about Groner assaulting her.
¶14. Failure to introduce Groner's booking photo. In various statements, Julie said that she hit Groner in the face to escape his assaults. She testified that she thought she hit him in the face. She evidently hit something, because her knuckles were noticeably bruised. Groner complains about his counsel's failure to introduce the booking photo, which arguably showed that Groner's face had no marks from being struck. However, that photo shows a rough, red, acne-scarred complexion. Counsel testified that he did not believe the photo was particularly exculpatory because of the condition of Groner's face. We conclude that counsel's strategic decision was reasonable.[3]
¶15. Failure to request a limiting instruction on Groner's prior convictions. Groner testified that he had three prior convictions. At the conclusion of his testimony, a juror requested that Groner be asked what those crimes were. Groner's counsel could have asked for an instruction informing the jury that it should not use Groner's prior convictions for any purpose other than credibility. Counsel testified that he did not request that instruction because it would have reminded the jury of the convictions. We agree with the trial court that it was reasonable for counsel to omit a request for such an instruction. The convictions were mentioned in passing. The court refused to answer the juror's question about them. Counsel could reasonably have determined that any further mention of the convictions would have served more as a reminder than anything else.
¶16. Failure to object to or move to strike parts of Julie's testimony. Police found a clump of Julie's hair in her apartment. Julie testified that Groner pulled some of her hair out during their struggle, and added that she "guess[ed]" that police found some of her hair in Groner's apartment as well. Trial counsel did not object to that statement, even though there was no evidence that police found any of Julie's hair in Groner's apartment. Counsel testified that he chose to ignore this statement because police testimony contradicted it. That was a reasonable decision. It was consistent with counsel's strategy to show Julie's unreliability as a witness.
¶17. Groner also faults counsel for not moving to strike Julie's inaccurate statement that police obtained a warrant to enter Groner's apartment. We agree with Groner that there is no indication that police obtained a warrant to enter his apartment, but disagree that Julie's testimony to the contrary harmed Groner's defense. Police had a difficult time waking Groner, and ultimately entered his apartment when he finally woke up and opened his door. Counsel gave no particular reason for not moving to strike Julie's statement about the warrant, but Julie's testimony was not prejudicial under any reasonable view. The police officers involved testified as to the circumstances surrounding their entry into Groner's apartment. The manner of entry was not a significant or disputed issue at trial.
¶18. Failure to file a Shiffra motion. Under the rule first set forth in State v. Shiffra, 175 Wis. 2d 600, 605-08, 499 N.W.2d 719 (Ct. App. 1993), a defendant may obtain the trial court's in camera review of a victim's confidential mental health records upon showing that the records are relevant and may be necessary to a fair determination of guilt or innocence. See State v. Navarro, 2001 WI App 225, ¶11, 248 Wis. 2d 396, 636 N.W.2d 481.[4] Here, Groner contends that trial counsel should have pursued the inspection of mental health records pertaining to a prior sexual assault where Julie was the victim. According to Groner, the records could show that Julie suffered flashbacks to that assault. The records might also show, according to Groner, that Julie subsequently took anxiety medication, with the possible side effect of hallucinations or delusions. However, the trial court concluded that it would not have granted a Shiffra motion because the information Groner speculates is contained in those records would not have substantially helped the defense. We agree with that ruling. The decisive issue at trial was whether Julie truthfully and reliably identified Groner as her assailant. The theory that she hallucinated the incident did not comport with the fact that she suffered numerous bruises and scratches. Clearly, something violent happened between Julie and someone. It was not a delusion. Consequently, Groner has not shown ineffectiveness because counsel has no duty to pursue motions that would have been unsuccessful. See State v. Wheat, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441, review denied, 2002 WI 111, 256 Wis. 2d 65, 650 N.W.2d 841 (July 26, 2002)(No. 01-2224-CR).
¶19. We turn now to Groner's assertion that the trial court erroneously denied him a new trial based on newly discovered evidence. The defendant seeking a new trial based on newly discovered evidence must show, among other things, a reasonable probability that the new evidence would produce a different result at trial. State v. McCallum, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). The trial court makes that determination in its discretion, and we will affirm the trial court's discretionary decision if it has a reasonable basis and was made according to the proper legal standards and facts of record. State v. Terrance J.W., 202 Wis. 2d 496, 500, 550 N.W.2d 445 (Ct. App. 1996).
¶20. Here, Groner presented evidence suggesting that Eric Sobek may have had some connection with Julie, or was present in her apartment building on the night of the assault. However, the trial court was persuaded that the Sobek evidence would not have made a difference, because Sobek's name on the 911 report may have been an error; police had contact with Sobek on the same day with regard to an unrelated matter; the testimony linking Sobek to Groner's and Julie's apartment building was vague and unreliable; no police officer connected to the case remembered any contact with or mention of Sobek; and Sobek's name never appeared in Julie's statements or testimony, or anywhere else in connection with this case. The trial court reasonably concluded that a jury would find the Sobek connection to be either a mistake, or a coincidence.
¶21. Finally, Groner asserts that the trial court erroneously denied his postconviction discovery motion. We disagree. Julie was hospitalized for several days right before the trial, which occurred just over three months after the assault. She testified that the hospitalization was for the purpose of monitoring a medication change. After trial, Groner obtained a document indicating that Julie was hospitalized for alcohol withdrawal. Consequently, he sought discovery of the hospital records in hopes of developing evidence relating to Julie's alcoholism, her medication for it, and the effect of medication on her memory and cognitive abilities. The standard for allowing postconviction discovery is whether the sought-after evidence probably would have changed the outcome of the trial. State v. O'Brien, 223 Wis. 2d 303, 321, 588 N.W.2d 8 (1999). The trial court reasonably denied discovery on the grounds that Groner could only speculate as to what the records might show and that alternative means were available to prove the effects of alcoholism and medication on Julie's mental processes.
By the Court.Judgment and order affirmed.
NOTES
[1] Julie's blood alcohol content several hours after the assaults registered at .253%.
[2] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[3] Groner contends that the photo was exculpatory, despite Groner's rough appearance, because a photo taken two years earlier was available, and that photograph showed similar facial markings. In fact, the earlier photograph, taken in different light, shows significantly less marking and redness on Groner's face. Its existence does not change our analysis.
[4] This was the standard at the time of Groner's trial. The standard now is "a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence," and that those records are not merely cumulative to other available evidence. State v. Green, 2002 WI 68, ¶34, 253 Wis. 2d 356, 646 N.W.2d 298.